E. M. SIMS, Respondent, v. OMAHA, KANSAS CITY & EASTERN RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, May 6, 1901.

1. **Master and Servant: OBEYING SUPERIOR AGENT.**  Where two agents are in authority over a servant, the latter may obey the superior of the two and the principal will be bound.

2. **Principal and Agent: SCOPE OF AGENCY: SERVANT: MASTER'S LIABILITY.**  Under the circumstances detailed in evidence, a servant was justified in obeying his superior even though the service was secretly intended by the superior for his personal benefit; and an instruction relieving the master from liability on the ground that plaintiff's injury occurred while not engaged about the master's business, was properly refused.

Appeal from Daviess Circuit Court.—*Hon. E. J. Broaddus* Judge.

Affirmed.

*J. G. Trimble* for appellant.

(1) Defendant's instruction six should have been given and plaintiff's instruction seven refused.   Griese had no authority over the men direct.   He did not go to Gilman on business for

the defendant, but for himself—to get his dinner. Plaintiff was not working in the line of his employment when running the handcar and was not engaged about defendant's business at the time of the accident. Knox v. Coal Co., 90 Tenn. 546; 18 S. W. Rep. 255.

*Harber & Knight* for respondent.

(1) The instructions for plaintiff were fully as favorable to defendant as it was entitled, covered every phase of the case in exact accord with often-approved precedents, and defendant has no reasonable ground of complaint in the giving of any and all of said instructions or the refusal of its demurrers, and instruction number six.

ELLISON, J.—This is an action for damages caused by personal injury inflicted upon plaintiff by reason of the derailment of a handcar on defendant's road. The judgment in the trial court was for plaintiff.

The evidence tended to show that plaintiff was at work for defendant with several others at and about a rock crusher. Griese was superintending the construction of the crusher and Lama was a foreman under him; or, as the latter stated it in his testimony, he "was under the direction of Griese and the men were under him." The crusher was at a place called Crusherville, which is about midway between the stations of Gilman and Melbourne, it being near three miles to either place. On the day of the injury to plaintiff, Lama directed him with others "to go along with Mr. Griese to help pump the handcar." These parties, under the direction of Griese, got on the handcar and went to Melbourne, where Griese got off, went into the depot and remained about thirty minutes, when he returned to the car and directed the men to take him to Gil-

man. When they got as far back as Crusherville they stopped while Griese went over to the rock crusher. After remaining there near an hour, he returned to the car and directed the men to take him on to Gilman. Here he again left the car, went into the depot, finally coming out and telling the men he could not return and for them to go back without him. In going back to Crusherville the car "jumped the track" throwing plaintiff and others to the ground, causing the injuries to plaintiff for which he brought this action. The evidence further tended to prove that the car left the rails by reason of negligent defects in the track at the point of accident; which defects consisted of high joints, low joints, high centers and low centers—these terms referring to the uneven and imperfect rails and roadbed.

All of the instructions asked by plaintiff were given. They are all justified by evidence admitted in his behalf. They duly submitted the question of defendant's negligence in permitting the track to become dangerous, and of plaintiff's care. They follow a long line of precedents in this State and we do not think it necessary to set them out in detail. All of those offered by defendant were given except one in the nature of a demurrer to the evidence and one numbered six. There was no reasonable basis upon which a demurrer could have been founded. The evidence in plaintiff's behalf tended to show a dangerous track; and it tended to show that defendant knew of its condition, or should have known of it. There was no pretense that it had become dangerous so recently before the accident that defendant could not reasonably have been aware of its condition.

The only point made against the judgment which we consider of consequence is that relating to the refusal of said instruction six. It is as follows:

"The court instructs the jury that if the men on the hand-

car took Mr. Griese to Gilman without orders or directions therefor from their foreman, or that said Griese took said men to Gilman for the purpose of going to his dinner, and that said trip to Gilman was not on business for the defendant, or by directions of the foreman, Lama, the verdict must be for defendant."

There was evidence tending to show that Lama, who was plaintiff's foreman, directed plaintiff and the others to take Griese to Melbourne and that he did not include Gilman in such instruction or order. But, as has been stated, there was also evidence tending to prove that Griese was Lama's superior in authority and that he gave orders to go to Gilman. If he was, then it was at least as much the duty of plaintiff to obey Griese as Lama. Where two agents are in authority over a servant, the servant may obey the superior of the two and the principal will be bound. The instruction was, therefore, in this respect, improper in confining the question of plaintiff's orders to such as Lama may have given him.

The instruction was also improper from another consideration. It directs a finding for defendant if Griese had plaintiff and the others to take him to Gilman for the purpose of the latter getting his dinner, and that going there was not on business for defendant. We need not say whether taking an agent in charge of railway laborers, on a handcar to a place where he could get his dinner, would be a service for the principal. For in this case there is no sufficient evidence to show that plaintiff knew that Griese's going to Gilman was to get his dinner; or, indeed, that such was his object. It was shown that he frequently went there, and there was evidence tending to show that he ordered material from there. In such circumstances a servant would be justified in obeying his superior even though the service was secretly intended by the superior for his personal benefit.

In stating the evidence in behalf of plaintiff we have not overlooked that offered by defendant tending ·to destroy plaintiff's case, but we need do no more than mention that the place to determine facts and settle contradictions and differences in testimony is in the trial court. We can find nothing to justify a reversal and the judgment will be affirmed. *Smith, P. J.,* concurs; *Broaddus, J.,* not sitting.