CARRIE MITCHELL, Appellee, v. CONSOLIDATED COAL COMPANY, Appellant.

**MASTER AND SERVANT:** Workmen's Compensation Act—Findings by Commissioner. A finding by the industrial commissioner on conflicting testimony on the issue whether an injured party was in the employ of a master or had been fully and finally discharged is conclusive on the courts.

*Appeal from Monroe District Court.*—D. M. ANDERSON, Judge.

MARCH 6, 1923.

THE appellee is the surviving spouse of William H. Mitchell, and as such was awarded compensation under the Iowa Workmen's Compensation Act, for the death of her husband. Her claim was approved and allowed, upon hearing before the board of arbitration. Said allowance was then reviewed by the Iowa industrial commissioner, and by him affirmed. From this finding the defendant appealed to the district court, by which the award was again and finally sustained. Defendant again appeals.—*Affirmed.*

*Mabry & Mabry,* for appellant.

*Clarkson & Huebner,* for appellee.

WEAVER, J.—The statement in this case may be materially abbreviated by quoting at the outset the statement of counsel for appellant, that the sole and "only question in dispute is whether or not the relation of employer and employee existed between the defendant company and the deceased." It is not denied that deceased had been employed in the defendant's mine, but it is insisted that, at the time of his injury, he had been discharged from the service, and that the relation of employer and employee, as contemplated by the statute, was completely terminated. The injury was received by the deceased while going down the "manway" into the mine on November 15, 1920. While thus engaged, he fell in such a manner as to wound or injure his hand upon the hook to his miner's lamp, the injury thus received becoming infected, and causing his death. It appears that, on or about November 1, 1920, deceased was ordered discharged from his employment, but within a few days was reinstated, and resumed work. Further friction seems to have arisen between him and the company, and it is claimed by defendant he was again discharged on or about November 10th. Concerning the matter of such employment from November 10th to November 15th, inclusive, there is considerable confusion in the testimony; but it appears fairly certain that Mitchell was intending to quit defendant's employment, and had negotiated for other employment in another mine. That such was his intention seems to have been understood by both parties; but there prevailed a custom in such employment by which a miner quitting his job, as a condition of receiving pay for work done, was required to "square up" his room by "shooting off" the corners and "loading out" the coal which is down, or which results from "squaring up" his room, and regularly until this is done and his work measured, his tools remain in the mine. When all is done according to rule or custom, the foreman allows him a car with which his tools are brought to the surface. It is argued for the appellant that Mitchell was unconditionally discharged on November 10th; that after that date he neither did nor intended to do any further work or to perform the customary duty of cleaning up his room; and that, in fact, his tools had been removed from the mine on the morning of

November 15th, before he received the alleged injury. We think, however, that this contention by counsel cannot be said to have been established as a matter of law, and that the conclusion of the arbitration board, the industrial commissioner, and the district court to the contrary was upon a fair question of fact, the finding of which in the claimant's favor has sufficient support in the record. A fellow workman testified that Mitchell lost two days between the 10th and 15th of November. His wife testified that he went to the mine on the morning of the 15th, to "square up his work and quit," and that, when he returned home, his hand was hurt. He had not then drawn his pay for work done, such payment being later made to the wife. Just before his hurt, a witness met him going down the "manway." In reply to a question, he said to the witness that he was going after his tools. As he passed, witness heard him fall; and in response to an inquiry whether he was hurt, he said he had stuck his lamp hook into his hand. An officer of the company, speaking of the custom prevailing with employees of the mine, says:

"When a man is discharged, he has a right to shoot his corners off that he has made the previous day.   *   *   * That was the custom at that mine and all other mines over the district. First, when he quits, he must square up the room and secure the place. After he has availed himself of the right to shoot off the corners, he still has further time to load out the coal he has down.   *   *   *   According to custom, when a man is going to quit, he must square up his work before he can draw his wages."

It is conceded, of course, that a miner may quit his work at any time, and that the company may waive his compliance with the custom referred to by not insisting upon its observance. There is in the record no express waiver of this kind, and whether the conduct of the parties be such that a waiver may be implied therefrom is a question of fact, upon which we think the finding of the arbitrators and industrial commissioner must be regarded as final. Indeed, the fact that there was any waiver of this kind is fairly negatived by the testimony of defendant's foreman, who says:

"When I told Mitchell he was discharged, I told him to square up his place and take his tools out."

The same witness was in the mine on the morning of the 15th, with deceased, and assisted him in measuring the work which had been done by him. It further appears to have been a rule or custom that a miner quitting the employment must get an order or permit for a car with which to "load out" his tools and bring or send them to the surface. This order was not given to deceased until the morning of the day he was hurt. It appears that, having obtained the order and presented it to the proper party, he became anxious to have the tools brought up promptly, in order to enable him to take a train to another mine; and it is the theory of the claimant—for which there is support in the record—that, when he received his hurt, he was going down the mine to hasten the hoisting of the tools and thus finally terminate his connection with the employment. It is to be conceded that there was evidence for the defense that, if true, would indicate that, at the time Mitchell was injured, the tools were either already at the top or very possibly were then being hoisted; but, if so, it is reasonably certain that deceased did not know that fact, and supposed that the hoisting was being delayed. Whatever may be the truth in this respect, the deceased was not a trespasser in the mine. The relations of employer and employee by virtue of which he entered the mine and had performed service there were not fully dissolved. The order for a car for his tools is shown not to have been presented until about 10 or half past 10 of the morning of the 15th of November; and it was still before noon when the witness met him going down the manway, to hasten the hoisting of the tools. Not until that was done can it fairly be said that his protection as an employee terminated, as a matter of law. 1 Honnold on Workmen's Compensation 373; *Pace v. Appanoose County*, 184 Iowa 498, 505.

The question raised in argument by appellant is one of fact, and, as we have already said, the finding appealed from is the equivalent of a jury verdict, and can be set aside only when it clearly appears that it is without any substantial support in the testimony. See *Jackson v. Iowa Tel. Co.*, 190 Iowa 1394;

*O'Neill v. Sioux City T. R. Co.*, 193 Iowa 41; *Flint v. City of Eldon*, 191 Iowa 845. This proposition is quite conclusive upon appeal to this court. While we will not hesitate to reverse a finding for which we can say there is no support in the record, the findings made by the arbitrator, by the industrial commissioner, and by the trial court upon the same record are not to be disregarded or set aside upon any doubtful or equivocal showing.

It is unnecessary to discuss any other feature of the case. All the facts necessary to sustain the award, except the alleged relation of employer and employee, are conceded in argument, and upon that issue we find against the appellant. The amount of the award, if liability for compensation exists, is not contested. It follows that the award and judgment appealed from are—*Affirmed.*

PRESTON, C. J., STEVENS and DE GRAFF, JJ., concur.