GUST JOHNSON, Appellee, v. CITY OF ALBIA, Appellant.

MASTER AND SERVANT: Workmen's Compensation Act—Termina-
1 tion of Employment. An employee who gives the master notice of
the termination of his employment, surrenders to his successor in em-
ployment the key to the work place, removes from the residence fur-
nished to him as part of his employment, and leaves the master's
premises, will not be heard to say that his employment continued
during that part of the following day during which he, for the sole
purpose of obtaining his tools, returned to the master's works, and
during which he voluntarily proceeded to assist his successor in oper-
ating the said works. (See Book of Anno., Vol. 1, Sec. 1421, Anno. 3
et seq.)

EVANS, C. J., dissents.

MASTER AND SERVANT: Workmen's Compensation Act—Employ-
2 ment in Emergency. An employee who is employed by another em-
ployee under implied authority which arises under an emergency must
be deemed a "casual" employee, and not within the benefits of the
Workmen's Compensation Act.

Headnote 1: Workmen's Compensation Acts—C. J. p. 48 (Anno.)
Headnote 2: Workmen's Compensation Acts—C. J. p. 52.

Headnote 2: L. R. A. 1916A, pp. 120, 247, 365; L. R. A. 1917D, 147;
L. R. A. 1918F, 202; 28 R. C. L. 761.

*Appeal from Monroe District Court.*—F. M. HUNTER, Judge.

FEBRUARY 15, 1927.

REHEARING DENIED JULY 1, 1927.

Proceedings under the Workmen's Compensation Act. The
claim of plaintiff was resisted by the defendant on the ground
that his employment had fully terminated before the occurrence
of the accident from which he suffered. This contention pre-
sents the sole issue in the case. The industrial commissioner
awarded compensation, and this award was confirmed by the
district court. From the order of the district court the defend-
ant appeals.—*Reversed.*

*John F. Abegglen* and *Bates & Dashiell,* for appellant.

*Mabry & Mabry,* for appellee.

FAVILLE, J.—On November 15, 1923, the plaintiff was in the employ of the defendant, as the engineer in charge of its pumping plant. He had been engaged in such employment for the seven years preceding. On the morning of November 15th, he notified the chairman of the waterworks committee that he would terminate his services that evening. Pursuant to such notice, the committee immediately made arrangements with one Seibert, to take the job thus to be vacated by the plaintiff. The plaintiff operated the engine and pumps until 7:15 P. M., at which time he had the tanks filled. At that hour, he left the plant for home. On the way home, he met Seibert, and advised him where he would find the key. Under plaintiff's contract of employment, he was furnished with a residence near the plant, and with a place to keep his cow and his portable garage. He had vacated the residence on November 15th, and had moved his family into another house down town. This latter was the residence to which he came, after leaving the plant at 7:15 P. M. There still remained upon his employer's premises his cow, his portable garage, and a car therein, and his tools, consisting of a sledge, a screwdriver, and three wrenches. He testified in this proceeding as follows:

1. MASTER AND SERVANT: Workmen's Compensation Act: termination of employment.

"My injury occurred on the 16th day of November, 1923, and my employment with the city continued up until the 15th day of November, 1923. I quit out there the 15th day of November, 1923, about 7:15. I notified Mr. Whitehead in the forenoon of the 15th. He was a member of the waterworks committee of the city council. I had never notified anyone, prior to that time, that I would quit on the 15th. My pay was cut, and I wasn't notified until the day it was taking effect; so I never resigned or notified the city that I would resign my place until the forenoon of the 15th. And I then notified them that I would quit that evening."

Upon the foregoing testimony of the plaintiff himself, the defendant predicates its contention that the relation of employer and employee between plaintiff and defendant was fully terminated on the evening of November 15th. The accident under consideration occurred on the morning of November 16th. The plaintiff returned to the plant at eight o'clock that morning, solely for the purpose of getting his tools. He found Seibert

there, and found him in trouble with the machinery. He was unable to start one of the pumps. This pump had a defective valve, which required a peculiar manipulation in order to start it. This defect was explained by the plaintiff to Seibert. Seibert requested the assistance of the plaintiff to start the pump. He went into the pump house and into the pit where the pumps were located, for the purpose of rendering such assistance. While engaged in such attempt, he was accidentally caught in some gearing, and lost his left arm as a result. The tools which plaintiff left at the pump house on the evening of November 15th were his personal property, and the necessary tools which he used in the operation of the plant. He testified that he left them there on that evening so that they might be used in case of necessity. So far as appears, they were the only tools at the plant which were available for use at the time the accident occurred, on the morning of November 16th. The purpose of the plaintiff in going to the plant on the morning of November 16th was solely to get his tools and to make preparations for removing the rest of his property, and incidentally to milk his cow.

The trial court decided the case solely on the ground that a fact question was involved, and that the order of the industrial commissioner was conclusive on the court. If there is a disputed question of fact, the decision of the commissioner is binding on the court. The conclusions of law of the commissioner on undisputed facts are, however, proper questions for the determination of the court. Three questions appear to be involved: (1) Was the employee still within the scope of his employment, at the time of the injury, when he returned to get his tools? (2) Did an emergency arise at the time which called for assistance to the new engineer, and clothed him with sufficient authority to bind the city in employing the workman at that time? (3) Is there evidence of such a custom among engineers that the outgoing engineer shall assist the incoming one as made the workman an employee at the time?

I. Was appellee still an employee under his original employment?

At the time the injury occurred, Code Supplement of 1913 was in force, and Section 2477-m16, Paragraph b, is as follows:

" 'Workman' is used synonymously with 'employee,' and means any person who has entered into the employment of, or

works under contract of service, express or implied, or apprenticeship for an employer.''

In *Knudson v. Jackson*, 191 Iowa 947, we considered this paragraph of the statute in considering the meaning of the word ''employee,'' and in said case reviewed the authorities at length, and held that we cannot enlarge the provisions of the statute, and that an employee, within the meaning of this act, ''in order to come under this statute, must have a contract of service, express or implied, with the employer who is sought to be charged with liability.'' The question at once, then, in the case is whether or not the appellee, at the time of the injury, to wit, on November 16th, had a contract of employment, express or implied, with the appellant. According to his own testimony, he had quit on the 15th of November. He had notified the waterworks committee of the city council, in the forenoon of that day, that he would quit, and he turned in his key. There is no claim that he was ever employed by the city council thereafter. He came to the place of his employment for a purely personal reason, namely, to secure his tools that were located on the premises. He did not come there to assist the new engineer or to do any work. At the request of the new employee, he attempted to assist him in the operation of the machinery on the place. This was purely voluntary on his part. There is no intimation in the record that any person authorized to engage employees for the city even so much as knew that the appellee was on the premises, and there is no suggestion that anyone in behalf of the appellant requested, or in any manner authorized, the appellee to assist the regular employee of the appellant who was then in charge of the work.

The appellee places great reliance upon the following quotation from 1 Honnold on Workmen's Compensation 373, where the rule is stated as follows:

''An employee is under the protection of the Compensation Act even after his *discharge,* providing he be injured upon the premises of the employer while remaining there for reasons connected with his former employment.''

This quotation from Honnold is supported by a single case in the footnote, to wit, *Goering v. Brooklyn Min. Co.,* 2 Cal. I. A. C. Dec. 124. In that case, an employee, a few minutes after being discharged, was cleaning up his work, preparing to leave

the premises. He was injured by an accident, and it was held that such accident occurred in the course of his employment, and that he was entitled to compensation. Neither the text nor the authority sustaining it is broad enough to support the appellee's contention in the instant case. It is obvious that a different situation is presented where, without the knowledge of the former employer, a discharged employee, the next day or later, after he has left the premises and terminated his contract of employment, re-enters the premises for purposes of his own, and voluntarily assists the new employee in performing his work.

Reliance is also placed upon the case of *Molloy v. South Wales Anthracite Colliery Co.,* 4 B. W. C. C. 65, C. A. In that case, the workman was a colliery repairer. He was ordered to do certain work which he declined to do, and left off work. He returned later, and obtained from the manager leave to go down into the mine and bring up his tools; and while in the mine for said purpose, was injured by a falling stone. The lower court found that the manager, on dismissing Molloy, *ordered* him to fetch his tools, and that the accident arose out of and in the course of his employment. The record in the case shows that, upon oral submission in the appellate court, counsel for the employer merely asked "that the case should be sent back, in order that the judge may consider whether all the facts are before this court, or a ruling by this court that, if the evidence in fact was given substantially as the employers say it was, as in fact appears on the judge's notes, then the judge has misdirected himself in holding that the accident 'arose out of and in the course of' the man's employment." They further stated:

"What my clients desire is that the facts may be stated in such a way that our real case may be before this court."

The court, considering the case orally, stated, "I am afraid we can do nothing for you." On motion, the appeal was dismissed. The case cannot be deemed an authority sustaining appellant's contention that the appellee in the instant case was the employee of the appellant at the time of the injury.

It is contended that this case is ruled by our holding in *Mitchell v. Consolidated Coal Co.,* 195 Iowa 415. In that case, the injured workman was a miner, and it appeared that he was discharged about November 10th. We noted that there was considerable confusion in the testimony, and that it was evident

that it was his intention to quit. It also appeared in that case that there was a prevailing custom in such employment, known to all parties, by which a miner who was quitting his job, as a condition of receiving pay for work done, was "required" to "square up" his room by "shooting off the corners" and "loading out" the coal which is down or which results from squaring up his room, and regularly until this is done and his work measured, his tools remain in the mine. It further appeared in said case that, when Mitchell was discharged, the foreman "told him to square up his place and take his tools out." It was while he was obeying these specific instructions that he was injured. His discharge was not accomplished until he had obeyed these definite orders given by his employer. No such situation is presented in the case at bar. The plaintiff herein had voluntarily quit. He had accomplished *all* the work he was required or expected to do under his employment. He had no orders whatever that required him to ever return to the premises. His duties had fully terminated, and he had sought other employment. The defendant employer, through its proper officers, had no notice even of any intention on his part to return to the premises; much less had it given him any directions, as in the *Mitchell* case, to do certain work *before* his discharge would be effective. The situation was altogether different from that in the *Mitchell* case, where the employee was acting under the specific directions of the employer before his discharge became effective. It also appeared in the *Mitchell* case that, according to an established rule or custom, the foreman allowed a quitting workman a car with which to bring his tools to the surface. It appeared in that case that, at the time of the injury, the workman was employed in this manner. We held that, under the record, the injured man was not a trespasser in the mine, and that the relations of employer and employee were not dissolved. We held that the question involved at this point was one of fact, and that the finding appealed from would not be set aside except when it clearly appeared that it was without substantial support in the testimony. The case is not controlling, under the facts in the instant case. The matter of custom is referred to later.

II. If it be assumed that an emergency existed, and that the new engineer had implied authority to engage the appellee to assist him at the moment (matters which we do not determine),

2. MASTER AND SERVANT: Workmen's Compensation Act: employment in emergency. in such event the case then must fall under the plain provisions of the statute, as being a casual employment. Section 2477-m16, Code Supplement, 1913, as amended by Chapter 270, Section 10, of the Acts of the Thirty-seventh General Assembly, was in force at the time of this injury; and under said section as so amended, in defining the word "workman," certain classes were excepted therefrom; and one provision of the statute is, "except a person whose employment is purely casual." We had occasion to consider the construction of the term "whose employment is purely casual," in *Bedard v. Sweinhart*, 186 Iowa 655. In that case, the claimant was employed to make repairs in shingling a house, and while he was engaged on that job, the employer requested him to fix a screen door and cellar window at another place. While doing this, he discovered that some cement was needed on the house that he was then shingling, and proposed that the employer get some cement and he would put it on. While engaged in making this repair, he received the injury complained of. We held that this was a casual employment, and denied recovery. The case was approved and followed in *Herbig v. Walton Auto Co.*, 191 Iowa 394, where the authorities are reviewed at length. It would seem that, even if the new engineer had implied authority to engage the claimant to assist him, the employment was "purely casual," and came within the express provision of the statute which excludes recovery in such case.

III. The appellee claims that, at the time of his employment and service, there was a general custom in that locality between engineers and their employers that, upon the termination of the service of the employed engineer, it was his duty to impart reasonable instruction and extend reasonable aid to his successor in the operation of the plant. The industrial commissioner made no finding that there was such a rule and custom prevailing in that locality. His decision does not rest upon any proof of custom. In fact, he does not refer to the question in his award, so we have no decision whatever upon this question, and hence nothing to review. In any event, he could not have found that such was established under the record in this case. Furthermore, there is no contention that, if a custom existed, as claimed, it was known to the appellant, or that it was so general that appellant was bound to know of it. In the *Mitchell* case,

the discharged workman had certain duties to perform in direct connection with finishing or cleaning up his work, under specific orders. His employment and orders included this very work, and while engaged in it, he was injured. It was also shown to be the custom that he should do this work. Not so in the case at bar. The appellee had quit the employment the day before the injury. He had surrendered his key to the premises. He was not there to complete any unfinished work. He did not go there at all for the purpose of aiding the new engineer. He went there *solely* for his own private purpose,—to get his tools. While he was there, the new engineer asked him to assist him in starting the pump. This he tried to do, and was injured.

However deplorable the accident, the claimant cannot recover unless he comes within the class provided for by the statute. There is no disputed fact question in the case. Upon the facts as found by the industrial commissioner, the claimant was not within the coverage of the statute.

The judgment must be—*Reversed.*

STEVENS, DE GRAFF, ALBERT, and MORLING, JJ., concur.

VERMILION, J., takes no part.

EVANS, C. J., dissents.

EVANS, C. J. (dissenting).—I am not able to concur in the majority opinion. In my judgment, it presents a too restricted view of the operation of the Workmen's Compensation Act, and emphasizes the letter, in violation of the spirit thereof.

At the risk of repeating facts which are already stated in the majority opinion, I shall herein present the whole case, briefly, as I see it.

On November 15, 1923, the plaintiff was in the employ of the defendant, as the engineer in charge of its pumping plant. He had been engaged in such employment for the seven years preceding. On the morning of November 15th, he notified the chairman of the waterworks committee that he would terminate his services that evening. Pursuant to such notice, the committee immediately made arrangements with one Seibert, to take the job thus to be vacated by the plaintiff. The plaintiff operated the engine and pumps until 7:15 P. M., at which time he had the tanks filled. At that hour, he left the plant for home.

On the way home, he met Seibert, and advised him where he would find the key. Under plaintiff's contract of employment, he was furnished with a residence near the plant, and with a place to keep his cow and his portable garage. He had vacated the residence on November 15th, and had moved his family into another house down town. This latter was the residence to which he came, after leaving the plant at 7:15 P. M. There still remained upon his employer's premises his cow, his portable garage, and a car therein, and his tools, consisting of a sledge, a screwdriver, and three wrenches. He testified in this proceeding as follows:

"My injury occurred on the 16th day of November, 1923, and my employment with the city continued up until the 15th day of November, 1923. I quit out there the 15th day of November, 1923, about 7:15. I notified Mr. Whitehead in the forenoon of the 15th. He was a member of the waterworks committee of the city council. I had never notified anyone, prior to that time, that I would quit on the 15th. My pay was cut, and I wasn't notified until the day it was taking effect; so I never resigned or notified the city that I would resign my place until the forenoon of the 15th. And I then notified them that I would quit that evening."

Upon the foregoing testimony of the plaintiff himself the defendant predicates its contention that the relation of employer and employee between plaintiff and defendant was fully terminated on the evening of November 15th. The accident under consideration occurred on the morning of November 16th. The plaintiff returned to the plant at 8 o'clock that morning. He found Seibert there, and found him in trouble with the machinery. Seibert was unable to start one of the pumps. This pump had a defective valve, which required a peculiar manipulation in order to start it. This defect was explained by the plaintiff to Seibert. Seibert requested the assistance of the plaintiff to start the pump, and he went into the pump house and into the pit where the pumps were located, for the purpose of rendering such assistance. While engaged in such attempt, he was accidentally caught in some gearing, and lost his left arm as a result. The tools which plaintiff left at the pump house on the evening of November 15th were the necessary tools which he used in the operation of the plant. He testified that he left them

there on that evening, that they might be used in case of necessity. So far as appears, they were the only tools at the plant which were available for use at the time the accident occurred, on the morning of November 16th. The purpose of the plaintiff in going to the plant on the morning of November 16th was to milk his cow and to get his tools and to make preparations for removing the rest of his property.

The plaintiff pleaded, and the evidence tended to prove, that, at the time of plaintiff's employment and service, there prevailed a general custom or rule in that locality, as between engineers and their employers, that, upon the termination of the services of the employed engineer, it was his duty to impart reasonable instruction and extend reasonable aid to his successor in the operation of the plant. It is the contention of the plaintiff that he was fulfilling his obligation in obedience to this rule at the time of his injury, and that, for the purpose of such service and within its scope, he was still the employee of the defendant, within the meaning of the Compensation Act, notwithstanding that he had already quit the general service of the employer. Here is the pivot of the case. If the contract of employment had been in writing, and if such writing had imposed such obligation upon the employee, it would hardly be claimed but that the obligation to perform such duty rested upon him, notwithstanding the fact that he had terminated his general service. The contract, however, was oral. Even an oral agreement to such effect would have been equally binding upon him. But no such express agreement was made. Nor is there any evidence of *any* express agreement in the oral contract of employment. It appears to have been informal, and to rest upon legal implication. If there was a general custom, as contended by the plaintiff, and as found by the industrial commissioner, it would become a part of the contract of employment by legal implication. If the rule established by the prevailing custom became a part of the contract of employment, then it has an important bearing upon the question whether the relation of employer and employee was terminated on the evening of November 15th. The termination of the relation of employer and employee, within the meaning of the Compensation Act, is often, if not usually, a mixed question of law and fact. It is not necessarily accomplished by mere words, however direct and positive they may be. A discharge

may be peremptory, and a resignation may be immediate and abrupt; and yet, for certain purposes that are incidental to the termination of the employment, and for a reasonable time, the relation may continue. That is to say, there may be duties owed by one to the other, or privileges due to one or the other, which are incidental to the termination of the employment. The law allows a reasonable time for the performance of such duties or the exercise of such privileges. In the performance of such duties or the exercise of such privileges within such reasonable time, the relation of employer and employee is deemed to continue, within the meaning of the Compensation Act. For instance, it is quite universally held that a discharged employee has a right, after his discharge, to enter upon the premises of his employer for the purpose of removing his tools. While so engaged, within a reasonable time, he is deemed an employee, and not a trespasser nor a licensee, and is under the protection of the Compensation Act. Not only so, but he is bound by the limitations of the Compensation Act, and may not resort to a common-law remedy for injuries which he may suffer at such time. In 1 Honnold on Workmen's Compensation 373, the general rule is stated as follows:

"An employee is under the protection of the Compensation Act even after his *discharge*, providing he be injured upon the premises of the employer while remaining there for reasons connected with his former employment."

Many illustrations of the rule are to be found in the English cases. A case very much in point is *Molloy v. South Wales Anthracite Colliery Co.*, 4 B. W. C. C. 65, C. A. (1911). The case at bar is quite controlled by our own recent case of *Mitchell v. Consolidated Coal Co.*, 195 Iowa 415. In that case, a discharged employee returned, four days after his discharge, to get his tools and to perform his final duties incident to the termination of his employment. While engaged in such effort, he was injured, and we held that he was under the protection of the Compensation Act. By way of distinguishing the case at bar from the *Mitchell* case, the appellant contends that the plaintiff, Johnson, did not return to the plant on the morning of November 16th *for the purpose of aiding Seibert*, but that he came there solely for his own purposes. It is true that he did not testify that he came there for the purpose of aiding Seibert. His

obligation to aid him, however, was no less on that account. Seibert had operated the machinery previously as an assistant to Johnson and as a substitute for him. Johnson might easily believe that Seibert would need no further assistance. Such a mental attitude would not be a repudiation of his obligation to render the service, if it proved necessary. He had a right to enter the pump house as an employee, in quest of his tools. But the accident did not happen to him in this quest. When he got to the pump house, he found Seibert in trouble, and apparently helpless to furnish the necessary amount of water to supply the town. Seibert, as witness for the defendant, described his own state of mind as follows:

"When Johnson came up and inquired how everything was, I swore."

It is clear that Johnson at this juncture found Seibert in need of instruction and help, even though he had not expected to find him in such state. It was his clear duty, under the implications of his contract of employment, to render such reasonable assistance as he could. In responding in good faith to that duty, he was to that extent an employee, and within the protection of the Compensation Act. Such was our holding in the *Mitchell* case. In that case, the duties which the employee was performing were not imposed by any express provisions of his contract, but were imposed by a general custom which prevailed in that locality, and which became a part of his contract by legal implication only. Such is the situation in the case at bar.

So far as the facts of this case are concerned, I have taken no account of conflicting evidence. The facts which I have assumed all have the support of evidence, and I would give effect to the finding of the commissioner accordingly. I would affirm.