JULIA M. TUNNICLIFF, Appellee, v. J. W. BETTENDORF et al.,
Appellants.

**MASTER AND SERVANT:** Workmen's Compensation Act—Mainte-
1  nance of Residence Not "Trade or Business." Testimony which
simply shows that a home owner maintains on his residential
grounds an additional residence which is occupied by his son establishes no such "trade or business" as renders the home owner
liable under the Workmen's Compensation Act to an employee who
is injured in the course of his employment while repairing the
equipment of the house occupied by the son; and this is true even
though the employee was not a casual employee.

**MASTER AND SERVANT:** Workmen's Compensation Act—Findings
2  and Conclusions of Commissioner. The findings and conclusions of
the industrial commissioner on undisputed testimony are not conclusive on the courts when such findings and conclusions are not
justified as a matter of law. (See Book of Anno., Vol. 1, Sec.
1452.)

Headnote 1: Workmen's Compensation Acts—C. J. pp. 52 (Anno.),
115.  Headnote 2: Workmen's Compensation Acts—C. J. pp. 123, 124.

Headnote 2: L. R. A. 1916A, 267; L. R. A. 1917D, 186; 28 R. C.
L. 829.

*Appeal from Scott District Court.*—WILLIAM W. SCOTT, Judge.

JULY 1, 1927.

The industrial commissioner denied compensation under
the Workmen's Compensation Act for the death of an employee. On appeal to the district court, compensation was
allowed, and the defendants appeal.—*Reversed.*

*Charles Grilk* and *A. R. Kroppach,* for appellants.

*Cook & Balluff,* for appellee.

VERMILION, J.—The facts, shown without dispute, are these: The appellant J. W. Bettendorf owned and maintained a residential estate of some magnitude, consisting of some 20

1. MASTER AND SERVANT: Workmen's Compensation Act: maintenance of residence not "trade ·or business."

acres of ground and numerous buildings. In addition to the residence occupied by J. W. Bettendorf, there was on the grounds another residence, known as the bungalow, which was occupied by his son, under some arrangement between the father and son, the exact nature of which is not disclosed, further than that J. W. Bettendorf was under obligation to maintain the house, so far as its equipment was concerned. A number of persons were employed by J. W. Bettendorf in caring for the buildings and grounds and performing necessary domestic services for him and his family.

The deceased, Cave Tunnicliff, was employed by J. W. Bettendorf as a chauffeur. He was a mechanic, and, in addition to driving, cared for and repaired the four automobiles and a truck owned by Bettendorf, looked after electric wiring, and repaired mechanical apparatus on the estate. He and his sister, the appellee, whose dependency upon him is not now questioned, lived in an apartment above the garage on the estate. At times, on the occasion of social functions at the residence of J. W. Bettendorf, and as a favor to his employer, rather than as a part of his duties, he acted in the capacity of butler or footman.

There was in the bungalow occupied by the son a gas-generating machine; and the deceased, while making repairs on this machine,—a work within the duties of his employment,—received an injury which resulted in his death.

Section 1363, Code of 1924, provides:

"Except as provided by this chapter, it shall be conclusively presumed that every employer has elected to provide, secure, and pay compensation according to the provisions of this chapter for any and all personal injuries sustained by an employee arising out of and in the course of the employment * * *."

By Section 1361 of the same chapter it is, however, provided:

"This chapter shall not apply to: 1. Any household or domestic servant. 2. Persons whose employment is of a casual nature."

"Workmen" and "employee" are defined by Section 1421, which further provides:

"The following persons shall not be deemed 'workmen' or 'employees': a. A person whose employment is purely casual and not for the purpose of the employer's trade or business."

It is the contention of the appellants that Tunnicliff's employment was as a domestic or household servant, and that, therefore, compensation for his death was not recoverable under the Workmen's Compensation Act. This is not seriously controverted by the appellee in this court in respect to his general employment, but it is insisted that the particular work in which he was engaged at the time of his injury was the repair of the equipment of a building occupied by a tenant, which the employer was under obligation to maintain, and that, by reason of this fact, the immediate employment in which the injury was received, was for the purpose of the employer's business or trade, and compensation may be recovered.

The industrial commissioner found:

"1. That the general range of employment in which Cave Tunnicliff was engaged in the service of the defendant employer is distinctly domestic in character, within the meaning of Section 1361 of the Code of Iowa.

"2. That the relations of the defendant employer and his son as to the occupancy of the bungalow involved in this record was not that of landlord and tenant in such a sense as to remove this case from the classification of domestic employment."

I. There is no merit in appellant's contention that the findings of fact of the industrial commissioner are conclusive. As we have said, there was no conflict in the evidence; and if the facts found by the commissioner do not support the order made by him, or if there is not sufficient competent evidence to support the finding, the order based thereon may be reviewed and set aside by the court. Section 1453, Code of 1924; *Rish v. Iowa Portland Cement Co.*, 186

2. MASTER AND SERVANT: Workmen's Compensation Act: findings and conclusions of commissioner.

Iowa 443; *Bidwell Coal Co. v. Davidson,* 187 Iowa 809; *Norton v. Day Coal Co.,* 192 Iowa 160; *Kent v. Kent,* 202 Iowa 1044; *Johnson v. City of Albia,* 203 Iowa 1171. It is only where there is a conflict in the evidence that the findings of fact of the commissioner are conclusive. *Pace v. Appanoose County,* 184 Iowa 498; *Flint v. City of Eldon,* 191 Iowa 845; *Sparks v. Consolidated Ind. Coal Co.,* 195 Iowa 334; *Wittmer v. Dexter Mfg. Co.,* 204 Iowa 180.

II. It is of the very spirit of the Workmen's Compensation Act—the fundamental idea that is its basis—that the disability of a workman resulting from an injury arising out of and in the course of his employment is a loss that should be borne by the industry itself, as an incident of operation,—in a sense an item of the cost of production,—and as such, passed on to the consumer of the product, and not suffered alone by the workman or the employer, according to the individual fault or negligence. *Pfister v. Doon Elec. Co.,* 199 Iowa 548. As was well pointed out by the commissioner in this case, it was this, in part at least, that prompted the exclusion from its operation of those engaged in agricultural pursuits, and household and domestic servants: the first, because of the recognized fact that the products of agriculture reach the consumer through the channels of an open market, and at prices that do not necessarily bear any relation to the cost of production; and the second, because there is no tangible, commercial product of domestic service,—it ministers only to the necessity, comfort, and convenience of the employer. We have said that the evident purpose of the legislature in enacting the statute was to apply it to industrial employment, and that:

"It was intended obviously to apply to cases where employers in industrial pursuits, outside of those excepted in the statute, carried on a business for pecuniary gain, and engaged employees to work for them in the prosecution of such business." *Oliphant v. Hawkinson,* 192 Iowa 1259.

"The clear objective of the Compensation Act is to protect the employee against the hazards of the employer's trade or business." *Eddington v. Northwestern Bell Tel. Co.,* 201 Iowa 67.

In *Pfister v. Doon Elec. Co.,* supra, we said:

"In other words, the Compensation Act is intended to apply to a trade or business of the employer."

In *Oliphant v. Hawkinson,* supra, the employer was the owner of a farm that was rented to a tenant for a term of years, and he had agreed with his tenant to construct a new corncrib on the farm. The employee was hired, with others, to construct the corncrib, and was injured while so engaged. We held that his employment was not within the intendment of the Workmen's Compensation Act. We said:

"We do not believe that the legislature of Iowa ever intended that this act should be construed in any such way, or that its terms were ever intended to include any such employment as being 'industrial employment for pecuniary gain.' Wachel's [the employer's] 'business' was not that of house building. He was not carrying on any such occupation, calling, business, or pursuit for pecuniary gain. Under the very language of the statute, this employment of appellee was not 'for the purpose of the employer's trade or business.' Wachel had no trade or business, within the meaning of this act. The fact that he owned a farm and leased it did not bring him within the class contemplated by this statute as 'an employer.' He was not engaged in any 'industrial employment for pecuniary gain,' within the purview of this statute."

It is true, in that case the contention was that the claimant's employment was casual, and therefore not within the act; but the statute then, as now, excepted from its operation "a person whose employment is purely casual, and not for the purpose of the employer's trade or business." Under the statute so worded, we held that, before the workman was excluded from the provisions of the act, it must appear that his employment was both casual and not for the purpose of the employer's trade or business. It was to the latter phase of the matter that the quoted language was directed. It is equally pertinent when we come to consider whether the specific act of one whose employment generally could not be said to be casual, but was of a character expressly excluded from the operation of the act, was within the purview of the statute because it was for the purpose of the employer's trade or business.

The claimant was under the burden of showing that the deceased employee was within the provisions of the Compensa-

tion Act. Was this burden successfully carried, under the undisputed facts shown in the record? The first inquiry is whether the deceased was employed or the injury received in the operation of the employer's trade or business.

In determining whether employment is casual, courts, giving effect to differing provisions of compensation acts, have applied different tests. Some courts, including those of England, construing statutes similar to our own, have said that the character of the work evidences the character of the employment. Others have said that the character of the employment, not the character of the work, is the test. See *Eddington v. Northwestern Bell Tel. Co.*, supra.

The appellant's contention in this court is that the work in which decedent was engaged at the time of his injury was in the prosecution of a trade or business of the employer's,—that of renting property,—and hence was within the contemplation of the statute. We held in *Oliphant v. Hawkinson*, supra, that, where the employment was by the landlord for a single job upon leased premises, and was casual, it was not for the purpose of the employer's trade or business, and was, therefore, within the exception. The facts do not require us to determine whether a landlord who employs another, not casually in point of duration or character of employment, to repair leased premises from which he derives a revenue, is subject to the provisions of the act if the employee suffers an injury in the course of and arising out of his employment. Should this be conceded, for the purposes of the present case, we think that the evidence falls short of showing that the employer had a business of renting property, or the bungalow in question, for pecuniary gain, so as to bring within the statute the particular work in which decedent was engaged.

The most that is shown, if we leave out of view, for the moment, the location of the property and the relation of the parties, is that a residence owned and maintained by the employer was occupied by another, under an arrangement with the owner. So far as appears, it may have been an arrangement wholly devoid of profit or pecuniary advantage to the employer, and bearing not the remotest semblance to the carrying on of a business or trade. An "arrangement" is as apt a description of a transaction not looking to pecuniary advan-

tage or profit, and having no relation to trade or business, as of one that is of a strictly business nature. Certainly the use of that term to describe the relation between a father and son, in respect to the house of the former occupied by the latter, gives rise to no inference that it was for the pecuniary advantage of the father. Especially is this true when it is considered that the house was located on the extensive and elaborate private residential grounds of the father, which he maintained at considerable expense for the comfort and enjoyment of himself and his family, and not for profit or as a business venture.

Counsel for appellee refer to the definition of a tenant at will, as found in Section 10159, Code of 1924, as supporting their contention. Conceivably, the owner might permit another to occupy property under such circumstances as that a tenancy at will would exist, so far as related to the right to terminate the relation, without being engaged in a business or trade, within the meaning of the Compensation Act.

We conclude that the undisputed facts appearing of record do not show that the work in which decedent was employed at the time of his injury was for the purpose of, or had any relation to, a trade or business of the employer's; and that the decedent was not, therefore, within the provisions of the Compensation Act; and that the court below erred in allowing compensation.

The judgment is—*Reversed.*

All the justices concur.