# IN THE SUPREME COURT OF IOWA

No. 23–0182

Submitted April 10, 2024—Filed May 10, 2024

**DEE A. DELANEY,**

Appellant,

vs.

**SECOND INJURY FUND OF IOWA,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.

The Second Injury Fund seeks further review of decision reversing a district court order affirming the workers' compensation commissioner's denial of Second Injury Fund benefits to an injured employee. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.**

McDonald, J., delivered the opinion of the court, in which all participating justices joined. May, J., took no part in the consideration or decision of the case.

Nate Willems of Rush & Nicholson, P.L.C., Cedar Rapids, for appellant.

Brenna Bird, Attorney General, and Jonathan D. Bergman, Assistant Attorney General, for appellee.

**MᶜDONALD, Justice.**

In 1986, Dee Delaney suffered an injury to her lower left leg. Thirty-three years later, she suffered an injury to her lower right leg in the course of her employment with Nordstrom, Inc. The later injury required knee surgery, and the knee surgery caused lymphedema in Delaney's lower right leg and foot. Delaney filed a claim for workers' compensation benefits against Nordstrom and the Second Injury Fund (the Fund). She reached a settlement agreement with Nordstrom and proceeded to arbitration against the Fund. The workers' compensation commissioner found that Delaney's lymphedema was a sequela of her work injury and that lymphedema is per se an injury to the body as a whole and not an injury to a scheduled member. The commissioner concluded that because Delaney suffered a sequela injury to the body as a whole, she was not entitled to Fund benefits under Iowa Code section 85.64 (2019). The question presented in this appeal is whether the commissioner erred in its interpretation and application of section 85.64.

I.

Iowa's workers' compensation law is presently codified in chapter 85 of the Iowa Code. Iowa's workers' compensation system dates to 1913. *See* 1913 Iowa Acts ch. 147; *Baker v. Bridgestone/Firestone*, 872 N.W.2d 672, 676 (Iowa 2015). The workers' compensation system rests on the policy judgment "that the disability of a work[er] resulting from an injury arising out of and in the course of his [or her] employment is a loss that should be borne by the industry itself . . . and not suffered alone by the work[er] or the employer." *Baker*, 872 N.W.2d at 676 (alterations and omission in original) (quoting *Tunnicliff v. Bettendorf*, 214 N.W. 516, 517–18 (1927)). The system imposes tradeoffs on employers and employees. "In the grand bargain removing workers' compensation matters from the civil justice system, employers receive immunity from potentially large tort

lawsuits . . . on the condition that they pay compensation benefits for injuries arising out of and in the course of employment without regard to fault." *Id.* at 676–77. Under this system, employers have an "obligation to pay compensation benefits in the correct amount promptly when they are owed to injured employees." *Id.* at 678. It is "a rule of statutory interpretation deeply embedded throughout our caselaw" that "[w]e liberally construe workers' compensation statutes in claimants' favor to effectuate the statute's humanitarian and beneficent purpose." *Id.*

Subchapter II of chapter 85 contains the "Second Injury Compensation Act." Iowa Code § 85.63; *see also Second Inj. Fund of Iowa v. Bergeson*, 526 N.W.2d 543, 547 (Iowa 1995). The Act "was conceived by the legislature to encourage the employment of disabled persons 'by making the current employer responsible only for the disability the current employer causes.' " *Gregory v. Second Inj. Fund of Iowa*, 777 N.W.2d 395, 398 (Iowa 2010) (quoting *Second Inj. Fund v. Shank*, 516 N.W.2d 808, 812 (Iowa 1994)). To advance that purpose, the Act establishes the Fund to pay compensation benefits to an employee "in the event an employee suffers a specified second injury." *Bergeson*, 526 N.W.2d at 547. *See generally* Iowa Code §§ 85.63–.69. When an employee suffers a specified second injury, "the employer shall be liable only for the degree of disability which would have resulted from the latter injury if there had been no preexisting disability." *Id.* § 85.64(1). The Fund is then liable for "the remainder of such compensation as would be payable for the degree of permanent disability involved after first deducting from such remainder the compensable value of the previously lost member or organ." *Id.*; *see also* 15 John Lawyer & James R. Lawyer, *Iowa Practice Series Workers' Compensation* § 17:1, at 241–42 (2022–2023 ed. 2022) (explaining that "[t]he Fund assumes responsibility for the

difference between the disability attributable to the employer and the total amount of disability after certain credits").

The limitation of the employer's liability and the Fund's obligation to pay second injury benefits is contained in section 85.64(1). In full, that provision provides:

> If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently disabled by a compensable injury which has resulted in the loss of or loss of use of another such member or organ, the employer shall be liable only for the degree of disability which would have resulted from the latter injury if there had been no preexisting disability. In addition to such compensation, and after the expiration of the full period provided by law for the payments thereof by the employer, the employee shall be paid out of the "Second Injury Fund" created by this subchapter the remainder of such compensation as would be payable for the degree of permanent disability involved after first deducting from such remainder the compensable value of the previously lost member or organ.

Iowa Code § 85.64(1).

Our caselaw provides that section 85.64 requires an employee to "prove three things to trigger the liability of the Fund." *Bergeson*, 526 N.W.2d at 547. "First, that he or she has either lost, or lost the use of a hand, arm, foot, leg, or eye. Second, the employee sustained the loss, or loss of use of another such member or organ through a work-related, compensable injury. Third, there must be some permanent injury from the injuries." *Id.* at 547–48; *see also Stumpff v. Second Inj. Fund of Iowa*, 543 N.W.2d 904, 906 (Iowa 1996); *Shank*, 516 N.W.2d at 812. Our caselaw also holds that the Fund is liable for benefits only where both of the employee's injuries resulted in the loss or loss of use of the scheduled members set forth in the statute. *See Second Inj. Fund of Iowa v. Nelson*, 544 N.W.2d 258, 270 (Iowa 1995) ("We conclude that section 85.64 requires two scheduled injuries to invoke Fund liability."). "It is the *cumulative* effect" of the injuries that result in industrial disability—"rather than the injuries considered

in isolation—that triggers the Fund's proportional liability." *Second Inj. Fund of Iowa v. Braden*, 459 N.W.2d 467, 470 (Iowa 1990).

## II.

Delaney sustained a qualifying injury to her left lower extremity in July 1986. On March 12, 2019, she sustained an injury to her right leg in the course of her employment with Nordstrom. After the March 2019 injury, Delaney treated with Dr. Nicolas O. Noiseux at the University of Iowa Hospitals and Clinics (UIHC). Dr. Noiseux determined that the March 2019 injury severely aggravated Delaney's underlying right knee osteoarthritis. In August 2019, he performed a total right knee arthroplasty on Delaney. In January 2020, he placed Delaney at maximum medical improvement (MMI) and released Delaney to return to work without restrictions. Dr. Noiseux assigned a 37% impairment rating to Delaney's right lower extremity.

Several months later, in June 2020, Delaney began to experience pain and swelling in her right foot and calf. She then saw Dr. Dale Bieber at UIHC, who diagnosed Delaney with postsurgical lymphedema. Dr. Bieber surmised that the lymphedema was due to the destruction of Delaney's lymph from the August 2019 surgery. Dr. Noiseux agreed with this diagnosis.

Delaney filed her petition for workers' compensation benefits against Nordstrom and the Fund in July 2020. Delaney and Nordstrom entered into a settlement agreement for the work injury. They stipulated that Delaney sustained a work-related injury to her right lower extremity on March 12, 2019, and that as a result of that injury she sustained permanent partial disability of 40% loss of use of the right leg. The Fund was not a party to the settlement and is not bound by the terms of the settlement.

In March 2021, at the request of her attorney, Delaney underwent an independent medical examination (IME) with Dr. Farid Manshadi. Dr. Manshadi

found that the August 2019 total right knee arthroplasty was causally related to the March 2019 work injury. He further found that Delaney sustained a 37% impairment of her right lower extremity. He also concluded that Delaney had reached MMI. With regard to the swelling and pain in her right foot and calf, Dr. Manshadi diagnosed lymphedema as a postsurgical complication. He opined that Delaney sustained a 3% impairment of the whole person as a result of the lymphedema. During this time, Delaney continued to have swelling and soreness in her right leg despite the use of a compression stocking.

Delaney's claim against the Fund proceeded to an arbitration hearing in September 2021, and the deputy commissioner concluded Delaney was not entitled to Fund benefits. The deputy stated: "The central dispute is whether [Delaney] has sustained a second qualified injury for purposes of the Fund." According to the deputy: "Under Iowa law, the second qualifying injury must be limited to a scheduled member. If the second injury occurred simultaneously with an injury to the body as a whole, industrial disability is implicated against the employer, and the employer is fully responsible." In resolving the central dispute, the deputy found Delaney's "right lower leg condition constitutes lymphedema." Based on the expert opinions provided, the deputy found Delaney's lymphedema was "a sequela of her March 12, 2019 work injury." The deputy concluded that lymphedema is an injury to the vascular system and that an injury to the vascular system "is an injury to the body as a whole." Because Delaney's injury was "not *limited* to a scheduled member injury," the deputy concluded Delaney "failed to demonstrate entitlement to benefits from the Second Injury Fund of Iowa." (Emphasis added.)

Delaney filed an intra-agency appeal. In the appeal decision, the commissioner "reach[ed] the same analysis, findings, and conclusions as those

reached by the deputy commissioner" and affirmed the arbitration decision in its entirety.

Delaney subsequently petitioned for judicial review. As in the agency proceeding, Delaney asserted that her postsurgical lymphedema limited to swelling in her right calf and right foot was not an injury to the body as a whole. She further contended that, even if lymphedema in the right foot and calf is an injury to the body as a whole, section 85.64 does not preclude recovery when an injury to a scheduled member results in a sequela injury to an unscheduled part of the body. The district court rejected Delaney's arguments and affirmed the agency's decision.

Delaney filed an appeal from the district court's ruling, and we transferred the case to the court of appeals. The court of appeals reversed and remanded the case with instructions. It concluded that nothing in section 85.64 "states the second loss of use must be *limited* to the enumerated parts." The court of appeals concluded that "[t]he loss of use of the right leg triggers possible Fund benefits" even if the injury to the scheduled member resulted in a sequela injury to another body part. In reaching that conclusion, the court of appeals relied on *Second Injury Fund of Iowa v. George,* in which we concluded that "[a] plain reading of the statute requires us to interpret the phrase 'which has resulted in the loss of or loss of use of another such member or organ' to mean a loss to another such member regardless if the second loss includes other injuries." 737 N.W.2d 141, 147 (Iowa 2007).

### III.

We granted the Fund's application for further review. Our review of this administrative appeal is governed by the Iowa Administrative Procedure Act, Iowa Code chapter 17A. Under the statutory scheme, the standard of review depends upon the nature of the question presented. We review the

commissioner's findings of fact for substantial evidence. *See* Iowa Code § 17A.19(10)(*f*); *see also Chavez v. MS Tech. LLC*, 972 N.W.2d 662, 666 (Iowa 2022). Because the commission is not vested with interpretive authority over statutes, we review the commissioner's interpretation of statutes for the correction of errors at law. *See Bridgestone Americas, Inc. v. Anderson*, ___ N.W.3d ___, ___, 2024 WL 1334165, at *3 (Iowa Mar. 29, 2024); *Loew v. Menard, Inc.*, 2 N.W.3d 880, 886 (Iowa 2024); *Chavez*, 972 N.W.2d at 666. The parties dispute the applicable standard of review. We conclude that the question before us is a legal one regarding the interpretation of statutes and precedents, and our review is thus for the correction of errors at law.

"We begin our inquiry in this case with the language of the statute as a whole." *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020). Under the plain language of the statute, an employee is entitled to Fund benefits if the employee (1) "previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye," (2) "becomes permanently disabled by a compensable injury," that (3) "resulted in the loss of or loss of use of another such member or organ." Iowa Code § 85.64(1). It is not disputed here that Delaney previously lost the use of her left leg in 1986. It is also not disputed here that, in 2019, Delaney suffered a permanent disability to her right leg by a compensable injury. The only question is whether the injury to her right leg "resulted in the loss of or loss of use of another such member or organ" within the meaning of Iowa Code section 85.64(1).

The commissioner concluded that Delaney's March 2019 injury did not result in the loss of use of her leg because the injury to Delaney's leg caused lymphedema as "a sequela of her March 12, 2019 work injury." In the commissioner's view, lymphedema is an injury to the vascular system, and an

injury to the vascular system is per se "an injury to the body as a whole" rather than an injury to one of the scheduled members set forth in section 85.64(1).

In support of the proposition that vascular injuries are per se whole-body injuries, the agency relied on this court's opinion in *Blacksmith v. All-American, Inc.*, 290 N.W.2d 348 (Iowa 1980). This is not the first time the agency has interpreted *Blacksmith* to stand for the proposition that injuries to the vascular system are per se unscheduled injuries. *See, e.g., Jimmerson v. Ultimate Auto. Serv. Ctr.*, Iowa Workers' Comp. Comm'n No. 1630457.01, 2023 WL 7040303, at *8 (Oct. 18, 2023); *Towers v. Architectural Wall Sys.*, Iowa Workers' Comp. Comm'n No. 5033125, 2013 WL 604204, at *8 (Feb. 14, 2013); *Smith v. Woodward State Hosp. Sch.*, Iowa Workers' Comp. Comm'n No. 1231567, 2000 WL 33992529, at *3 (Oct. 31, 2000); *Clark v. Clinton Engines Corp.*, Iowa Workers' Comp. Comm'n No. 1059121, 1999 WL 33619552, at *6 (Sept. 23, 1999).

Although the agency has frequently cited *Blacksmith* as supporting its per se rule for vascular injuries, we conclude that was and is error. *See, e.g., Architectural Wall Sys. v. Towers*, No. 13–1653, 2014 WL 3511892, at *4 n.5 (Iowa Ct. App. July 16, 2014) (explaining the commissioner used *Blacksmith* "to infer our supreme court would consider any similar vascular injury to the lower extremity to be an injury to the body as a whole" and stating "[w]e do not necessarily agree *Blacksmith* lends itself to such a conclusion"). The "controlling question" in *Blacksmith* was "whether the industrial commissioner erred in denying additional workers' compensation to an employee who was transferred by his employer to a lower-paying job following a work-related phlebitis attack." 290 N.W.2d at 349. It was a review reopening case in which the employee sought additional benefits due to a change in his earning capacity caused by his work-related injury and not due to an increase in his functional impairment. *Id.*

We held "that Blacksmith sustained his burden of proof to show that the 1977 injury was a proximate cause of his reduced earning capacity." *Id.* at 354. While there was some discussion of the claimant's vascular disease, there was no statement that vascular disease is per se an injury to the body as a whole. *See id.* at 353–54. Indeed, from our review, *Blacksmith* is wholly irrelevant to the issues presented in this case involving the Fund.

The relevant precedents demonstrate that whether an injury results in the "loss of use" to a scheduled member or extends to the body as a whole is a fact-based inquiry that must be determined on a case-by-case basis. In some cases, an injury to a bodily system may extend beyond a localized area and amount to an injury to the body as a whole. For example, in *Barton v. Nevada Poultry Co.*, we found that a disorder that "affect[ed] [the] *entire* nervous system" was an unscheduled disability. 110 N.W.2d 660, 661 (Iowa 1961) (emphasis added) (holding that claimant's complex regional pain syndrome or Sudeck's atrophy was an unscheduled industrial disability).

In other cases, an injury to a bodily system may result only in localized loss of use to a scheduled member identified in section 85.64(1). In *Second Injury Fund of Iowa v. Armstrong*, for example, the court of appeals concluded that an employee who developed neuropathy—a condition affecting the nervous system—in his leg as a result of a work injury was eligible for Fund benefits. No. 10–1689, 2011 WL 2090023, at *4 (Iowa Ct. App. May 25, 2011). The court explained that the "condition was limited to [the employee's] lower extremity" and there was "nothing in the record to support the argument that [the employee] suffer[ed] from any systemic condition extending beyond his left lower leg." *Id.* The court of appeals reasoned that "the line of cases involving systemic conditions affecting the body as a whole [were] not applicable" because the employee's "injury was confined to a scheduled member." *Id.*

For its part, the workers' compensation commission has also recognized that injuries to bodily systems may result in scheduled injuries. *See, e.g.*, *Reichert v. John Deere Waterloo Works*, Iowa Workers' Comp. Comm'n No. 21700341.01, 2022 WL 17915446, at *9 (Dec. 19, 2022) (finding that injury to the circulatory system was not injury to the body as a whole because "the arteries at the hand and then the digits are the parts of the body that are affected in this case, not the whole of the arterial system"); *Topete v. Glob. Food Processing*, Iowa Workers' Comp. Comm'n No. 1167910, 1999 WL 33619689, at *1 (June 24, 1999) ("[T]he mere fact that the skin covers the entire body does not render an injury to the skin of the arm an injury to the body as a whole."). In such cases, concluding "that any damage to the nervous system, vascular system, or skeletal system is unscheduled . . . would largely do away with the statutory schedule altogether." *Nelson v. Artistic Waste Servs., Inc.*, Iowa Workers' Comp. Comm'n No. 1304096, 2002 WL 32125502, at *5 (Sept. 4, 2002).

An illustrative example of the fact-based determination required by the statute is the arbitration decision in *Burk v. Elliot Oil Co.*, Iowa Workers' Comp. Comm'n No. 22000068.01, 2023 WL 5006058 (July 31, 2023). In that case, the deputy commissioner succinctly explained why all injuries involving nerves are not necessarily unscheduled injuries to the nervous system:

> Claimant asserts she is entitled to industrial disability as her burn injuries resulted in nerve damage to her feet. While it is acknowledged that injuries to the nervous system can indeed lead to industrial disabilities, it is important to note that this is not always the case. For example, a carpal tunnel injury to the wrist results in impingement of the median nerve, a part of the nervous system. More often than not, this impingement results in burning, numbness, or tingling. However, a carpal tunnel injury is not an injury to the entire nervous system just because it impacts on a part of the nervous system.

*Id.* at *7. The deputy commissioner then found the claimant's nerve damage constituted a scheduled injury. *Id.* He reasoned that "no evidence has been found to support the contention that the claimant suffers from any systemic condition that extends beyond her feet. Thus, it can be concluded that all the injury, impairment, and effects stemming from the bilateral injury are contained within the feet themselves." *Id.*

We think the case-by-case approach as reflected in *Armstrong, Reichert v. John Deere Waterloo Works, Topete v. Global Food Processing,* and *Burk* is the correct approach dictated both by statute and our precedents. We thus hold that the commissioner erred when it concluded that an injury to the vascular system is, as a matter of law, an unscheduled injury to the whole body for the purposes of Iowa Code section 85.64(1). The agency must make a fact-based determination on a case-by-case basis to determine whether an injury results in the loss of use of a member identified in Iowa Code section 85.64(1). Since the agency applied an erroneous legal principle, reversal on this issue is mandated. *See McSpadden v. Big Ben Coal Co.,* 288 N.W.2d 181, 185–86 (Iowa 1980) ("It is well established that the application of erroneous legal principles mandates reversal.").

In addition to applying an erroneous per se rule, the workers' compensation commissioner also committed a second error in disposing of this case. The commissioner held that an injury resulting in the loss of use of a scheduled member was not a qualifying injury under section 85.64 if the injury caused a sequela injury to the body as a whole. This court has already concluded that "loss of or loss of use of another such member or organ" includes "a loss to another such member regardless if the second loss includes other injuries." *George,* 737 N.W.2d at 147 (quoting Iowa Code § 85.64(1)). And, in *Gregory v. Second Injury Fund of Iowa,* we explained that it was not relevant under

section 85.64 that the injury to the scheduled member subsequently caused an impairment to an unscheduled member. 777 N.W.2d at 400 (stating liability "under section 85.64 is not affected by the fact that the incident also caused bilateral shoulder impairment and was therefore compensated as an unscheduled injury").

The commissioner has reached a similar conclusion in a materially indistinguishable case, *Strable v. Second Inj. Fund of Iowa,* Iowa Workers' Comp. Comm'n No. 1666216.03, 2022 WL 17490657, at *6–7 (Nov. 29, 2022) ("The court in *Gregory* instructed the agency to look at whether the alleged first qualifying injury caused an injury to an enumerated member (a hand, arm, foot, leg, or eye) and whether the alleged second qualifying injury caused an injury to another enumerated member that was caused by claimant's employment regardless of whether the injuries caused other enumerated scheduled injuries, or other nonenumerated or unscheduled injuries."). We think the commissioner's analysis in *Strable* was correct.

Our conclusion today, and the commissioner's conclusion in *Strable,* "will not result in a double recovery." *Gregory,* 777 N.W.2d at 401. The Fund is liable only for "the cumulative effect of scheduled injuries resulting in industrial disability to the body as a whole." *Braden,* 459 N.W.2d at 470 (emphasis omitted). In determining the Fund's liability, "the commissioner shall consider only the extent to which [the employee's] earning capacity was diminished by the combined effect of the . . . losses to her *enumerated extremities." Gregory,* 777 N.W.2d at 401. This is a "new and discrete assessment by the commissioner" that limits any potential double recovery. *Id.*

## IV.

For the foregoing reasons, we vacate the decision of the court of appeals and reverse the judgment of the district court. We remand this case to the district

court with instructions to remand this matter to the workers' compensation commissioner for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.**

All justices concur except May, J., who takes no part.