ROBERT T. PETERSEN, Appellant, v. CORNO MILLS COMPANY, Appellee.

No. 41951.

JUNE 20, 1933.

REHEARING DENIED OCTOBER 20, 1933.

B. D. Silliman, for appellant.

Carl F. Jordan, for appellee.

MITCHELL, J.—Robert T. Petersen, the claimant and appellant, was employed in September, 1930, by the Corno Mills Company, a corporation which owned and operated a plant at Cedar Rapids, Iowa, known as the Three-Minute Cereal Company. Petersen was employed as an office and messenger boy. Customarily he received the company's mail at the post office at 6:30 in the morning, had it sorted by 8 o'clock when the office opened, and at the close of the day's business in the evening he deposited the mail at the post office. During the day he made trips to the bank, to the freight offices, down stairs, paid bills in the business district, and ran errands as he was directed to do by his employer. In addition to these routine duties, the claimant, during his entire period of employment, from November, 1929, until September, 1930, was frequently ordered to perform services and to run errands for Mr. John C. Reid, who was the general manager of the Cedar Rapids branch of the Corno Mills Company. During this period of time he made many trips connected with Mr. Reid's personal business, and it appears from the record without contradiction, both from the testimony of Mr. Adrian Vermeersch, office manager of the employer, and of Mr. John C. Reid, the general manager of the Cedar Rapids branch, that it was

Mr. Petersen's duty to perform such errands and services as were requested of him by Mr. Reid, regardless of whether it was a personal matter or connected with the company's business. Whenever Mr. Petersen was required to leave the plant, according to the rules and regulations of the employer, Petersen was instructed to present a written slip to Mr. Vermeersch, the office manager. This slip described the purpose of the trip and stated the destination and what time he expected to be back.

On the 19th of September, 1930, Petersen reported to the office for work as usual. About 9 o'clock in the morning he was called into Mr. Reid's private office, and Mr. Reid directed him to go to his house and to perform any work and do anything which Mrs. Reid might want him to do. It seems that on the following day Mr. Reid's daughter was going to be married, and there were various things to be done around the house and yard to prepare for the event. Petersen immediately reported to the office manager, Mr. Vermeersch, and filed with him a slip of paper showing where he was going and what he was going to do, and received from Mr. Vermeersch his O. K. on the slip. This was in compliance with the rules and regulations of the company and in the ordinary course of business. When he arrived at the Reid home, he moved furniture around and went down town on a couple of errands, using Mr. Reid's car. He was there from 9 a. m. until 5 p. m. On the following day, September 20, 1930, Mr. Reid called up the office and said he wanted Fred Schindler and Petersen to come out to the house. In compliance with the regular procedure at the office, Petersen again presented a written slip to the office manager, and received his O. K., and went out to Reid's home, in compliance with the direction of his employer. Mr. Reid himself directed Schindler to take down a lot of lights used at a lawn party and Petersen to take up the canvas they had stretched out on the lawn to dance on. Mr. Reid was there when Petersen started to do his work and told him what to do. Reid suggested he use a hammer to pull up the pegs. They were about six inches long and driven into the ground, and the hammer did not seem to work right, so Petersen got a screw driver to pry over the hammer. Petersen had pulled up about half of the stakes when, all of a sudden, a piece of a stake split off and hit him in the eye. The stakes were made out of prepared boards and each one had a notch in it. The part above the notch was the part that struck Petersen. He was hit in the left eye.

A doctor was immediately called by Mrs. Reid and Petersen was taken to the hospital, where his injury received treatment. Mr. Vermeersch, the office manager of the Three-Minute Cereal Company, recognizing that Petersen was injured while working for the company, filed a report of the injury with the insurance carrier. Petersen was paid for his time on the day of the injury by the Corno Mills Company. He received no pay from Mr. Reid personally. The record shows that not only this errand boy Petersen, but all other errand boys since 1904, had been required, while working for the Corno Mills Company, to perform services for Mr. Reid's convenience, and had at all times performed personal services for Mr. Reid. Mr. Reid himself testified that it was Petersen's duty to perform the services requested, and that, had Petersen refused, he would have been discharged. There is no dispute in the evidence on the extent of the injury. Dr. Bailey testified that the use of the left eye is permanently destroyed. The nature of the defense was a general denial that the accident arose out of and in the course of the employment, and that the claimant at the time of his injury had departed from the course of his employment and was engaged in an independent enterprise.

The case was first presented to an arbitration committee, which held against the claimant; from which ruling the claimant took an appeal to the industrial commissioner, who affirmed the decision of the arbitration committee, holding that the claimant was not entitled to compensation; and from that ruling the claimant appealed to the district court of Linn county, which sustained the finding and order of the industrial commissioner; and from the ruling and judgment of the district court the claimant has appealed to this court.

 At the very outset we are met by the contention of the appellee that the findings of fact of the industrial commissioner are conclusive.

This court, in the case of Tunnicliff v. Bettendorf reported in 204 Iowa 168, on page 170, 214 N. W. 516, 517, says:

"There is no merit in appellant's contention that the findings of fact of the industrial commissioner are conclusive. As we have said, there was no conflict in the evidence; and if the facts found by the commissioner do not support the order made by him, or if there is not sufficient competent evidence to support the finding, the order based thereon may be reviewed and set aside by the court. Section 1453, Code of 1924; Rish v. Iowa Portland Cement Co., 186 Iowa 443, 170

898

N. W. 532; Bidwell Coal Co. v. Davidson, 187 Iowa 809, 174 N. W. 592, 8 A. L. R. 1058; Norton v. Day Coal Co., 192 Iowa 160, 180 N. W. 905; Kent v. Kent, 202 Iowa 1044, 208 N. W. 709; Johnson v. City of Albia, 203 Iowa 1171, 212 N. W. 419. It is only where there is a conflict in the evidence that the findings of fact of the commissioner are conclusive. Pace v. Appanoose County, 184 Iowa 498, 168 N. W. 916; Flint v. City of Eldon, 191 Iowa 845, 183 N. W. 344; Sparks v. Consolidated Ind. Coal Co., 195 Iowa 334, 190 N. W. 593; Wittmer v. Dexter Mfg. Co., 204 Iowa 180, 214 N. W. 700."

In the case at bar there is absolutely no dispute as to the facts, not even as to the extent of the injury. The employer speaking through its general manager, Mr. John C. Reid, and through its office manager, Mr. Vermeersch, admits and testifies positively that the injury arose out of the claimant's employment. Mr. Reid, the general manager, testified that it was a part of the job that Petersen held to run errands for him of a personal nature, and that this had been true of all office and errand boys that had been employed by the company since he had been vice president and general manager, or since the year 1904. Mr. Reid testified that, had Petersen refused to obey the orders given by him to go to the Reid home and do whatever he was directed to do there, he would have immediately discharged him. The nature of a man's employment is determined by the contract, and certainly no one should be in a better position to construe that contract than the employer and employee who are parties to it. The employer says, through its general manager, that, when Petersen was performing the duties which gave rise to his injury, he was within the scope of his employment. This case is to be determined upon the evidence as to what Petersen's duties were with this company, and not upon the evidence as to what the duties of office and messenger boys ordinarily might be. According to this record, it has been part of the duties of the office or errand boys connected with the appellee company during the past twenty-five years to render personal service to Mr. Reid, to run errands for him, and to do things for him personally. This was known to the company, because Mr. Reid so testified and he was the vice president and general manager in charge of the company's mills at Cedar Rapids. It was an arrangement which no doubt was of great benefit to the appellee company. It removed these personal matters from Mr. Reid's mind and from his time. It gave to Mr. Reid an opportunity to spend more time in his offi-

cial capacity, as vice president and general manager of this appellee company. It no doubt was cheaper for the Three-Minute Cereal Company to pay an office boy to perform these tasks than to have its general manager bothered with them. It was cheaper for the company to have this work done by Petersen at its expense rather than have Mr. Reid employ his time during business hours to employ some other help to do the same work. There are many reasons that we can think of why this plan and arrangement was agreeable to the appellee company; but, after all, it is not necessary that we specify any reasons why the plan was agreeable. The company was satisfied. It continued over a long period of years. The company is not now raising the question. It is a peculiar record that confronts us—an employer who admits liability, represented by an attorney who does not agree with his own client.

A very similar case to the case at bar was passed upon by the Minnesota Supreme Court in the case of O'Rourke v. Percy Vittum Co., reported in 166 Minn. 251, 207 N. W. 636. On page 638 of 207 N. W. the court said:

"But an employer may enlarge or extend the scope of the employment, and an employee who, at the direction of his employer or of a superior to whose orders he is subject, performs services outside the duties of his usual employment, and performs them in consequence of the existence of the relation of employer and employee, and as incidental to the employment, is within the protection of the act while performing such services. Mann v. Glastonbury Knitting Co., 96 A. 368, 90 Conn. 116, L. R. A. 1916D, 86; Sunnyside Coal Co. v. Industrial Com., 126 N. E. 196, 291 Ill. 523; Engels Copper Mining Co. v. Industrial Com., 192 P. 845, 183 Cal. 714, 11 A. L. R. 785; Sims v. O. K. C. & E. Ry. Co., 89 Mo. App. 197; Grieb v. Hammerle, 118 N. E. 805, 222 N. Y. 382; 7 A. L. R. 1075; Brown v. Scott, 1 W. C. C. 11; Statham v. Galloways Limited, 2 W. C. C. 149; State ex rel. v. Industrial Commission, 193, N. W. 450, 155 Minn. 267. Where an employee performs services for a third party by direction of his employer, if the relation of employer and employee continues to exist between them during the performance of such services, the employer is liable under the Compensation Act for injuries sustained by the employee while performing the task so assigned to him, although he may be under the control of the third party as to the details of the work. State ex rel. D. M. Gilmore Co. v. District Court, 179 N. W. 216, 147 Minn. 12; Conroy

v. Murphy, 180 N. W. 704, 148 Minn. 14; Matter of De Noyer v. Cavanaugh, 116 N. E. 992, 221 N. Y. 273; Famous Players Lasky Corp. v. Industrial Com., 228 P. 5, 194 Cal. 134, 34 A. L. R. 765; Insurance Co. v. Industrial Com., 210 P. 628, 190 Cal. 97; McDowell v. Duer, 133 N. E. 839, 78 Ind. App. 440; Clancy's Case, 117 N. E. 347, 228 Mass. 316; Rongo v. R. Waddington & Sons, 94 A. 408, 87 N. J. Law 395. O'Rourke was told by Vittum to get a few small cedar trees from the farm. He was not told for what purpose they were wanted—whether for sale or otherwise. If it appeared that he undertook to procure them merely as an accommodation to Vittum personally, the corporation would not be liable under the Compensation Act. But where he undertook to procure them because directed to do so by the officer of the corporation to whose orders he was subject, the corporation is liable, even if the work was outside of the obligatory duties of his employment or was performed for another."

In the case of Bushing v. Iowa Ry. & Light Co., reported in 208 Iowa 1010, at page 1018, 226 N. W. 719, 723, this court said:

"An injury occurs in the course of the employment when it is within the period of the employment, at a place where the employee reasonably may be in performing his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. * * * An injury in the course of the employment embraces all injuries received while employed in furthering the employer's business, and injuries received on the employer's premises, provided that the employee's presence must ordinarily be required at the place of the injury, or, if not so required, employee's departure from the usual place of employment must not amount to an abandonment of employment, or be an act wholly foreign to his usual work. * * * An employee does not cease to be in the course of his employment merely because he is not actually engaged in doing some specifically prescribed task, if, in the course of his employment, he does some act which he deems necessary for the benefit or interest of his employer."

In the case of Walker v. Speeder Mach. Corp., reported in 213 Iowa 1134, on page 1149, 240 N. W. 725, 731, this court says:

"It seems quite clear that, in accordance with the weight of authority in this and other states, the decedent in this case was do-

ing what a man employed as he was might reasonably do, within a time in which he was employed, and at a place where he might reasonably be during that time. The injury arose in the course of his employment. It is contended that the injury did not arise out of the employment. It must be recalled that, while Walker had the option to select the place where he would eat and the time he would eat, yet his meals were paid for by his employer. As previously stated, the employer paid all of the traveling expenses, including transportation, hotels, and meals. It was necessary that Walker should travel, that he should rest at hotels, and that he should eat meals. It was as necessary to the performance of his work that he sustain himself by eating as that he reach the place where the work was to be performed by certain transportation. By virtue of his employment, he was where he could not eat at home or at his regular boarding place. He was, in a sense, living in the employer's quarters, and at the time of the accident was on his way to get a meal furnished to him by the employer. This was a necessary incident to the work. He could not do the work without sustaining himself. He was in the city of Pittsburgh solely because he had been ordered there by his employer. He was waiting there to do the work of the employer. While waiting, it was incumbent and necessary that he sustain himself with food. He was in the act of passing between his hotel and the place where food was to be obtained, when the accident occurred. We think the injury arose out of the employment. See Pace v. Appanoose County, 184 Iowa 498, 168 N. W. 916; Rish v. Iowa Portland Cement Co., 186 Iowa 443, loc. cit. 448, 170 N. W. 532, 534. In the latter case, this court said: 'Injuries received while the workman was engaged in ministering to himself, such as warming himself, seeking shelter, quenching his thirst, taking refreshment, food, fresh air, or resting in the shade, have been held compensable.' "

It seems to us that the facts and circumstances in this case are quite similar to the case of Walker v. Speeder Mach. Corp., above cited. If a salesman is within the scope of his employment when he crosses the street in Pittsburgh, Pa., at 9:30 o'clock on a Sunday night, for the purpose of obtaining something to eat, certainly a messenger boy, who during working hours does what the general manager tells him and directs him to do, must likewise be within the scope of his employment. Petersen was hired as an office boy and errand boy. It had been the custom and the practice of

the appellee company for a period of twenty-five years to have its office or messenger boy, holding the job that Petersen held at the time of the accident, perform personal services for the general manager, John C. Reid. This was known to the appellee company. The appellee company is not complaining, but in the uncontradicted evidence admits that that was part of Petersen's job. The company knew that Petersen was going to Reid's house on the day he went there, and what he was going to do when he got there, and how long he was going to stay, for Petersen, after being directed by Reid, the general manager, to go, reported, in compliance with the rules of the company, to Mr. Vermeersch, the office manager, that he was going to the Reid home, what he was going to do, and approximately the length of time he would be there. Mr. Vermeersch O. K.'d the assignment. It was during the working hours that Petersen went to the Reid home. He was being paid by the appellee company for the service that he rendered at the Reid home. Petersen had no choice of the work that he was to perform for his employer, and the record shows that, had he refused to perform the work that he was directed to do on the day the injury happened, he would have been discharged. The Workmen's Compensation Act was passed for the purpose of protecting the employee. Under the circumstances and conditions that this record shows, it seems to us that the injury arose out of the employment. To arise out of the employment, the accident must be incidental to performing the contract of service. The contract of service in this case provided, among other things, that Petersen should run personal errands for John C. Reid, the general manager of the corporation. The accident must also occur in the course of the employment, doing something which the employee may reasonably do, within a time during which he is employed and at a place where he may reasonably be during the time of his employment. Petersen in this case was doing exactly what his employer, the Corno Mills Company, speaking through its general manager, Mr. Reid, directed him to do, and at the place where his employer directed him to do it. Petersen was not working at the Reid home as a volunteer, nor as a personal favor to John C. Reid, but strictly because of his employment with the Three-Minute Cereal Company. Clearly, under the record in this case, we believe Petersen is entitled to the compensation provided by the Workmen's Compensation Act for the injury he received.

The lower court erred in not granting such compensation to

the claimant, and the judgment and decree of the lower court must be, and it is hereby, reversed, and this cause remanded.—Reversed and remanded.

KINDIG, C. J., and STEVENS, ANDERSON, and KINTZINGER, JJ., concur.