## Richmond

### H. M. ARRINGTON, ET ALS V. WILLIAM MURRAY.

December 6, 1943.

Record No. 2766.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*May, Simpkins & Young*, for the appellants.

*Homer Thomas* and *T. Brooke Howard*, for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

The sole question involved in this appeal is whether the injuries sustained by appellee, William Murray, arose out of and in the course of his employment with the partnership of Arrington and Heishman, trading as Greenwood Sales and Service.

The Industrial Commission, after full hearing, awarded compensation in favor of appellee.

It is contended by appellants that at the time of the injury to appellee, he was not engaged in work for appellants but was engaged in work for one of the partners in his individual capacity. In other words, appellants contend that at the time of the injury appellee was "a loaned employee."

Arrington and Heishman, trading as Greenwood Sales and Service, conducted a garage and service station and Murray was employed as "a handy man" to work about the service station, and in addition thereto, to do such other work as the partners directed him to do at their homes and elsewhere. The partnership paid out of the partnership funds for the full services rendered by Murray, at the rate of eighteen dollars a week.

It appears that the filling station was located on property adjacent to Arrington's home and upon several occasions Murray performed services for Arrington. On June 12, 1942, at approximately five o'clock in the afternoon, Heishman and Murray left the garage, in the company truck, bound for the Heishman home. Upon their arrival at the home, Murray, under the supervision of Heishman, collected some rocks to build a fireplace, after which he was directed to clean the cellar floor. While performing this

service the fluid used in cleaning the floor exploded and Murray was seriously injured.

When examined as a witness, Heishman testified that Murray was employed to do janitor's work at the garage and any other work required by either of the partners at any other place. When asked what would have happened had Murray refused to go to his home and perform the required service, Heishman replied that he would no longer have been considered an employee. It was upon this evidence that the Industrial Commission predicated its finding that the accidental injuries arose out of and in the course of Murray's employment.

In support of the contention that the evidence shows as a matter of law that Murray was "a loaned employee," the case of *Ideal Steam Laundry* v. *Williams*, 153 Va. 176, 149 S. E. 479, is relied on.

The case at bar is easily distinguishable from that case. In it this appears:

"Claimant was employed by J. T. Eanes, trading as Ideal Steam Laundry, at a wage of $20.00 per week. Though carried on the books of the laundry as an employee thereof and required to work four days a week as a janitor, he was also required to work one day a week at the home of Eanes and also one day a week at the home of H. O. Malone, superintendent of the laundry, in consideration of extra duties performed at the laundry by Malone. While at the homes of Eanes and Malone, claimant did gardening, domestic work and odd jobs about the premises as he was directed by them or their wives. Although subject to recall if his services were required at the laundry, claimant, while working at the home of Malone, was under the control of Malone and his wife, both as to the work performed and the method of doing it."

It is to be observed that in the *Williams case* the work performed for Malone by Williams was in payment of extra services performed by Malone as superintendent of the laundry. It also appears that Williams, while working at the Malone home, was under the joint control of Malone

and his wife and only subject to recall at the laundry if his services were required. In other words, there was no connection between the services performed for the laundry and the services performed under the direction of Mrs. Malone. In the instant case, the partnership engaged the claimant to work at the garage and at the homes of the partners, under their supervision. A failure to obey orders would have meant dismissal.

In the case of *Alexandria* v. *McClary*, 167 Va. 199, 188 S. E. 158, where a similar question was involved, this court held that a police officer of that city was under no obligation to perform his duties in any county or city except Alexandria; however, where at the request of the chief of the police department of that city, he did, as was the custom of police officers, go into a surrounding county for the purpose of apprehending a criminal, and while in the adjoining county was under the direct supervision and control of the chief of police of Alexandria, he was at the time performing duties within the scope of his employment, and his widow could claim compensation. Mr. Justice Holt, in upholding the award, said:

"He was not a volunteer and, as the Commission well said, would probably have been discharged had he failed or refused to go."

The case of *Keasey* v. *Mitzel Bros.*, 135 Pa. Super. 460, 461, 5 A. (2d) 631, is directly in point. There we read:

"On July 15, 1935, Morris Mitzel ordered the claimant to do some painting on a house that Morris owned individually. While so engaged a ladder slipped, the claimant was thrown to the ground and was injured. It was shown by a witness called by defendants that the claimant was paid by the partnership for the work done on the buildings and around the premises of the individuals, that the paint used was paid for by the partnership and that claimant's time spent in performing work at the premises of the individuals and the cost of the paint were not charged by the partner-

ship to the partners. In short, such work was treated as partnership business.

"It will be observed that the defendant partnership acting through one of its members gave positive orders directing the claimant to do the work he was engaged in when injured. We are not dealing with a case where a partnership gives permission to a third party to use one of the employees of the partnership so that the employee becomes the temporary servant of such party. We find nothing in evidence which would support a finding that Keasey was loaned to Morris Mitzel individually. As we pointed out in the case of *Smedley* v. *Frank & Seder Co.*, 116 Pa. Superior Ct. 270, 176 A. 783, there is an important distinction between lending an employee to another and giving orders to the employee to do some work for a third party. There is even greater reason for distinguishing a situation where the employer, as here, retains control of the manner in which the work shall be performed."

In *Peterson* v. *Corno Mills Co.*, 216 Iowa 894, 249 N. W. 408, we quote from the syllabus as follows:

"An injury to an employee of a corporation 'arises out of, and in the course of' his employment when the injury is received while the employee is performing work at the private residence of the manager of the corporation, for the personal and individual benefit of said manager, and under orders from said manager,—it appearing that the contract of employment between the corporation and the employee contemplated and required such occasional work for said manager."

In the opinion of Deans, Commissioner, this language is apposite:

"To deny the injured compensation would mean that we would hold that an employer could direct an employee to do certain work which would place him outside of the protection of the Workmen's Compensation Law. This would be an inequitable situation for the employee when requested to do a task, and as in this instance would

acquiesce, it would mean he would not have the protection of the Workmen's Compensation Law, or on the other hand if he refused to do the work he would probably be discharged for insubordination."

The award of the commission will be affirmed.

*Affirmed.*