DENNIS FRANCIS COLLINS's (dependent's) CASE.

Suffolk. February 6, 1961. — April 5, 1961.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Workmen's Compensation Act,* Public employee, Injuries to which act applies, To whom act applies, Costs.

G. L. c. 152, § 26, as amended through St. 1955, c. 174, § 5, was applicable to permit an award of workmen's compensation to the dependent of a city employee who, while assisting in delivering coal to the house of the superintendent of his department pursuant to an order of the superintendent, died of a heart attack causally related to such activity. [391–393]

An amount allowed for costs in a decree of the Superior Court enforcing an award of compensation in a workmen's compensation case could not be increased by this court on the record on an appeal from the decree. [393]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Taveira, J.*

*Stephen T. Keefe, Jr.,* Assistant City Solicitor, for the insurer.

*Kevin E. Costello,* for the claimant.

KIRK, J. This is an appeal by the city of Quincy, a self insurer, from a decree awarding compensation to a widow

on account of the death of her husband, an employee, in accordance with a decision of the reviewing board which reversed the findings and decision of the single member.

The deceased, sixty-eight years of age, had been employed by the forestry department of the city for several years. On March 28, 1956, Andrew Stewart, the superintendent of the forestry department, requested his foreman, Francis Keegan, to pick up an order of coal at a Quincy coal yard and deliver it to premises owned by Stewart in Quincy. Keegan took Collins, the decedent, with him in a city owned truck and picked up six baskets of coal weighing seventy-five to eighty pounds each. They brought the coal to Stewart's premises at 117 Sea Avenue. The house, which is located at the foot of a steep slope between the street and the ocean, is set back about forty feet from the street. The day was very cold and windy, and the slope was covered with snow. The two men carried the baskets of coal down the slope to the rear of the Stewart house. While Keegan was carrying a basket toward the house, Collins dropped dead on the slope. The cause of death was coronary thrombosis.

The single member denied the claim for compensation on the ground that the claimant had "failed to sustain the burden of proof by a fair preponderance of . . . evidence that the decedent suffered personal injury arising out of and in the course of his employment with the city of Quincy; or that his death was in any way causally related to said employment."

In reversing the single member the reviewing board found that although the delivery of the coal "was not in the usual course of the business of the city of Quincy," the "request" by Stewart to Keegan for such delivery "was equivalent to an 'order' to . . . [Keegan] within the purview of § 26 of c. 152[1] . . . and that such order contemplated the

---

[1] The pertinent provisions of G. L. c. 152, § 26, as amended through St. 1955, c. 174, § 5, are as follows: "If an employee . . . receives a personal injury arising out of and in the course of his employment, or arising out of an ordinary risk of the street while actually engaged, with his employer's authorization, in the business affairs or undertakings of his employer . . . he shall be paid compensation by the insurer or self-insurer . . . . For the purposes

inclusion of the deceased within its scope as he was Keegan's assistant who was required by the latter to go with him and, as we infer and find, to assist him in carrying the coal." The board further found on the basis of expert medical testimony that the deceased's death was causally related to his employment.

The findings of the reviewing board supersede those of the single member. *Brewer's Case,* 335 Mass. 128, 129. The general finding of the reviewing board is final unless it is not supported by evidence or is affected by errors of law, and this is so even if a different finding could have been made by the board. *Hartman's Case,* 336 Mass. 508, 511, and cases cited. Examination of the evidence satisfies us that the findings of the board are warranted by the evidence. The city does not contend the contrary.

The sole question is whether the board's decision is tainted by error of law in ruling that G. L. c. 152, § 26, is applicable. Section 69 of G. L. c. 152 entitles certain employees ˚(laborers, workmen and mechanics) of cities (as well as other governmental units of the Commonwealth) which have accepted St. 1913, c. 807 (see now G. L. c. 152, §§ 69–75), to the compensation provided by the workmen's compensation act. We assume that the city of Quincy has accepted the act. There is no question that the decedent was an employee within the meaning of G. L. c. 152, § 69. *Stoltz's Case,* 325 Mass. 692, 693–694. The city urges, however, that the provisions of § 26 (quoted in footnote 1) cannot be applied to city employees referred to in § 69, because it would result in a diversion of public funds for a private purpose, which would be illegal. (See *Opinion of the Justices,* 313 Mass. 779, 783.) This contention is untenable. It erroneously assumes that the quoted part of § 26 impliedly authorizes supervisors to order subordinates

---

of this section . . . any person who, while engaged in the usual course of his trade, business, profession or occupation, is ordered by an employer, or by a person exercising superintendence on behalf of such employer, to perform work which is not in the usual course of such work, trade, business, profession or occupation, and while so performing such work, receives a personal injury, shall be conclusively presumed to be an employee . . .."

to perform personal errands for supervisors. Such unde-
sirable and unintended side effects if they occur ought not
to defeat the true purpose of the statute. The true aim of
the statute is to save employees, public or private, covered
by the act from an "intolerable dilemma": without such a
statutory provision an employee who complied with such an
order would forfeit his compensation protection; if he did
not comply, he might well be subjected to unpleasant conse-
quences. See Larson, Workmen's Compensation Law,
§ 27.40. The beneficent purpose of the statute should not
be permitted to fail because of the possibility of abuse of
authority by those in public supervisory positions. The
risk of the decision to obey or not to obey the order should
not fall on the employee. Rather, the responsibility for the
validity of the order should remain with the supervisor who
issues it. The true purpose of the statute could still be
preserved, and the inherent possibilities of abuse curtailed,
by the imposition by proper authorities of direct sanctions
against supervisors who would exploit the efforts of sub-
ordinates to private advantage.

The view which we take is consistent with, and to some
extent in furtherance of, the development of the workmen's
compensation law within the Commonwealth. "[It] is a
proceeding created by our statutes enacted for the purpose
of ameliorating the economic plight of an employee injured
in the course of and on account of his employment, or of
his dependents if death ensues from his injury." *Charon's
Case,* 321 Mass. 694, 697. See also *Young* v. *Duncan,* 218
Mass. 346, 349. In every case where a city employee is
awarded compensation under the act an individual will re-
ceive a benefit at the expense of the city, but this does not
mean that the act has a private purpose. On the contrary,
the act has a public purpose, as this court has repeatedly
said since its enactment. *Nartowicz's Case,* 334 Mass. 684,
687.

In furtherance of the purpose of the act, it is to be con-
strued broadly to cover as many employees as possible.
*Warren's Case,* 326 Mass. 718, 719. See *Castagna's Case,*

310 Mass. 325, 328. Compare *Ryder's Case,* 341 Mass. 661, 665. By acceptance of § 69 the electorate of the city has indicated an intention to accomplish the beneficent purpose of the act which requires that all of the provisions of § 26 be operative. Indeed, when the city elected to accept the act, it assumed the position of any other employer subject to the act, and thereby became bound by all the provisions of § 26. See *Stoltz's Case,* 325 Mass. 692, 695; *Hurley's Case,* 302 Mass. 46, 48. There is no merit to the city's contention that § 26 does not apply to this case.

The claimant asks us in her brief to modify the decree by allowing costs of $1,200 instead of the $400 therein provided. For the reasons stated in *Watson's Case,* 322 Mass. 581, 586, and in *Brek's Case,* 335 Mass. 144, 149, we cannot do so.

Costs and expenses of this appeal under G. L. c. 152, § 11A, shall be allowed by the single justice.

*Decree affirmed.*