## CLARENCE KEENE AND CLINTON PEARSON, T/A PEARSON & KEENE DOCK BUILDERS ET AL. v. HAROLD ROLAND INSLEY

[No. 411, September Term, 1974.]

*Decided May 2, 1975.*

The cause was argued before MORTON, DAVIDSON and LOWE, JJ.

*Lloyd A. Dreiling*, with whom was *David D. Patton* on the brief, for appellants.

No appearance or brief filed for appellee.

DAVIDSON, J., delivered the opinion of the Court.

On 16 May 1970 the appellee, Harold Roland Insley (claimant), sustained serious burns and injuries at the home of Orville Pritchett when he attempted to burn a pile of brush which was preventing him from cutting the grass. On 29 May 1970 he filed a claim for compensation with the Workmen's Compensation Commission (Commission) against the appellants, Clarence Keene and Clinton Pearson, T/A Pearson & Keene Dock Builders (partnership), and Selected Risks Insurance Company, its insurance carrier (insurer). On 14 August 1970, after a hearing, the Commission found that the partnership was not the employer of the claimant at the time of the alleged injury and that the claimant did not sustain an accidental injury arising out of and in the course of employment. The Commission disallowed the claim for compensation.

The claimant filed an appeal in the Circuit Court for Dorchester County. After a *de novo* hearing held on 8 April 1974, a jury, presided over by Judge C. Burnam Mace, found

that the partnership was the claimant's employer at the time of his injury and that he did sustain an accidental injury arising out of and in the course of his employment. On 26 April 1974 the partnership's motion for judgment *n.o.v.* was denied. It is from this order that the partnership appeals. Here the partnership's sole contention is that the evidence was insufficient to submit to the jury the questions of whether the partnership was the employer of the claimant at the time of the alleged injury and, if so, whether the claimant sustained an accidental injury arising out of and in the course of his employment.

In this case the evidence was sharply disputed. Viewed in the light most favorable to the claimant, however, the facts are as follows.[1] The appellant was employed by the partnership for several years before his accident on 16 May 1970. Both partners had the right to control and direct his activities. The claimant testified that his duties included "whatever they'd tell me to do ... whenever they needed me." His regular duties included helping to build piers, bulkheads, dikes, boat ramps and duck blinds. He would drive pilings, go into the woods to cut logs for pilings which he would then haul out, stack lumber, hammer nails, bore holes, cut bolts and saw boards. On occasion, when directed so to do by Mr. Keene, he would cut the grass at Mr. Keene's garage. Most of this work was performed on Monday through Friday but because the partnership work depended upon the weather the claimant frequently was unable to

---

1. In determining whether a motion for judgment *n.o.v.* should have been granted this Court must resolve all conflicts in the evidence in favor of the non-moving party and consider all of the evidence and inferences fairly deducible therefrom in the light most favorable to the party against whom the motion was made. Baltimore & O.R.R. v. Plews, 262 Md. 442, 449, 278 A. 2d 287. 290 (1971): I.O.A. Leasing v. Merle Thomas Corp.. 260 Md. 243. 248-49, 272 A. 2d 1, 4 (1971); *see* Moran v. Faberge, Inc., 273 Md. 538, 540, 332 A. 2d 11. 13 (1975); P. Flanigan & Sons v. Childs. 251 Md. 646, 653, 248 A. 2d 473, 477 (1968); Cluster v. Cole, 21 Md. App. 242, 249, 319 A. 2d 320, 324-25 (1974). Consequently, if there is any competent evidence, however slight, tending to support the claimant's right to recover, the case should be submitted to the jury and the defendant's motion for judgment *n.o.v.* denied. Belleson v. Klohr, 257 Md. 642, 646, 264 A. 2d 274, 276 (1970); Montgomery Ward & Co. v. McFarland, 21 Md. App. 501, 513, 319 A. 2d 824, 831 (1974); Miller v. Michalek, 13 Md. App. 16, 17-18, 281 A. 2d 117, 118 (1971).

accrue 40 hours of compensable work during such a five day period. Often when he did not "make his hours" the claimant would be asked to perform such services as cutting and hauling logs from the woods or cutting grass at Mr. Keene's garage on Saturdays.

The claimant was paid on an hourly basis at the rate of $2.25 per hour, by a partnership check issued to him on Fridays. No records of the number of hours worked by the claimant were kept either by him or the partnership. Clarence Keene, who mentally logged the number of hours of work performed by the claimant, would issue a partnership check which showed the total amount of money paid to the claimant, but did not show the number of hours worked. These checks were, in turn, looked at and signed by Clinton Pearson, the other partner, who knew "how much time he [the claimant] made." The amount of the checks would then be forwarded to an accountant for payroll and bookkeeping purposes. When the claimant worked on a Saturday the number of working hours then accumulated would be carried over to the ensuing week. The claimant would be paid by a partnership check issued the following Friday.

At one time Clarence Keene had operated commercially the garage which he owned. Since the formation of the partnership approximately eight or nine years previously, he utilized the garage solely for repairing motors as an accommodation to friends and as a social gathering place. The garage belonged solely to Keene, was not located on partnership property nor connected with partnership business in any way except for the possible storage of "some bolts, nails, things like that, cable." A number of men in the community regarded the garage as a "hangout" where at various times they would assemble to fish nearby, cook meals and drink beer.

On 16 May 1970 the claimant's son, Carl Insley, picked his father up at his father's home and drove him to Keene's garage arriving at about 9 a.m. The claimant's son began to repair a malfunctioning motor. A number of men, including Keene, were present. At some point in time the claimant's

son informed Keene that in order to complete the repair it was necessary to have gaskets "to finish the motor up." Keene told a man named Orville Pritchett who worked at an auto repair shop that he wanted him to go get the gaskets. Pritchett refused, saying that he had to go home and cut his grass. At this juncture the claimant started to leave in order to go down the road and get some beer. According to the claimant, Keene called him back and told him "to go down and help Orville." The claimant got into Pritchett's car and went with him, fully expecting, based upon his past experience in being paid for cutting Keene's grass on Saturday, to be paid by the partnership. As stated by the claimant, ". . . Mr. Keene is the one that paid me — he is the one that sent me."

Upon arriving at Pritchett's house the claimant began to cut the grass with a power mower which shortly ran out of gas. As the claimant and Pritchett were getting ready to refill the lawn mower they decided to burn a big pile of brush which was "in the way of cutting the grass." Pritchett poured some gasoline on the brush; then the claimant threw a match into the pile to ignite it. The pile of brush "blew up" from eight to 12 feet. As a result the claimant suffered serious burns and other bodily injuries.

At the hospital, Clarence Keene assured the claimant's daughter that she did not "have a thing to worry about . . . that Orville [Pritchett] had a homeowners policy and if it didn't cover it [the medical expenses], that he had sent my father, that he would put him on his insurance." The claimant was never compensated for the work performed on the day of the accident either by the partnership or by Keene.[2]

---

**2.** Although the partners conceded that the claimant had worked for them for several years prior to the day of the accident, they denied vigorously that he had ever worked for the partnership on a Saturday. Mr. Keene admitted that the claimant had mowed his grass previously on Saturdays but asserted that he had never paid the claimant anything for this task except a beer to drink. Both partners testified that the claimant had never been paid for any work done on a Saturday. Finally, Mr. Keene denied that he told the claimant to go help Pritchett on 16 May 1970 or that he stated that his compensation insurance would protect the claimant in any way. The testimony that Mr. Keene directed the claimant to go with Pritchett and that he told the daughter about his insurance was corroborated by other witnesses.

The partnership and insurer contend that the evidence was insufficient to sustain the jury's findings. They maintain that, even when viewed in the light most favorable to the claimant, the evidence establishes that at the time of his injury the claimant, as a result of an unauthorized direction from one of the partners, was performing services for a third party, which were not a part of his regular duties and which were of personal benefit to the assigning partner rather than to the partnership's business. They assert that under such circumstances the claimant was not an employee of the partnership at the time of his injury, and that his injury did not arise out of and in the course of his employment.

The question of whether a claimant, directed by a person in authority to do work outside his normal duties for the private benefit of his superior is an employee acting within the scope of his employment has not previously been answered in Maryland. In 7 *Schneider's Workmen's Compensation*, § 1660 (a) (3d Ed. 1950) it is stated:

> "An employee who, as a voluntary accommodation to his employer or to another, performs services outside the scope of his employment, is not within the act while performing such services. * * * But an employer may enlarge or extend the scope of the employment and an employee who, at the direction of his employer or of his superior to whose orders he is subject, performs services outside the duties of his usual employment, and performs them in consequence of the existence of the relation of employer and employee, and as incidental to the employment, is within the protection of the act while performing such services. * * * Where an employee performs services for a third party by direction of his employer, if the relation of employer and employee continues to exist between them during the period of such services, the employer is liable under the compensation act for injuries sustained by the employee while performing the task so assigned to

him although he may be under the control of the third party as to the details of the work."

Similarly, 1 *Larson's Workmen's Compensation Law*, § 27.40 (1972) states:

"When any person in authority directs an employee to run some private errand or do some work outside his normal duties for the private benefit of the employer or superior, an injury in the course of that work is compensable.

. . .

"The technical reason for these holdings is that, whatever the normal course of employment may be, the employer and/or his supervisory staff have it within their power to enlarge that course by assigning tasks outside the usual area. If they do not assign these tasks on the strength of the employer-employee relation on which compensability depends, then what is the source of authority by which the task is assigned?

"The practical reason for the rule is that any other view places the employee in an intolerable dilemma: if he complies with the order, he forfeits compensation protection; if he does not comply, he gets fired.

"Tested by these single arguments, the early cases denying compensation seem wrong."

Again it is said in 58 Am. Jur. *Workmen's Compensation*, § 231, p. 738 (1948):

"According to many authorities, however, the employee is entitled to compensation as for an injury arising out of and in the course of his employment when such injury was received in the performance of work for his employer outside the scope of his usual duty, but which the employee had been expressly ordered to do by someone authorized to direct him as to his work . . ."

Finally in 99 C.J.S. *Workmen's Compensation*, § 217, p. 718 (1958) reference is made to cases which hold that:

"An act directed by the employer and one which the employee performed in the good faith belief that he was following the directions of his superior are within the course of employment, although the act is beyond the scope of the employee's duties. . . ."

A majority of state courts which have considered this question agree.[3] In reaching this result various rationales

3. San Antonio v. Al Izzi's Motor Sales, Inc., 290 A. 2d 59 (R.I. 1972) (carpenter working for automobile agency ordered to do maintenance work on boss' private property); Department of Parks v. Howard, 445 S.W.2d 438 (Ky.Ct.App. 1969) (labor foreman at park golf course told to help a park supervisor move from park land); Harry Fleming Washer Service v. Industrial Commission, 222 N.E.2d 490 (Ill. 1966) (manual laborer sent to employer's home to do menial chores); Continental Casualty Co. v. Industrial Commission, 135 N.W.2d 803 (Wis. 1965) (plant foreman told to carry manager's pregnant dog upstairs in plant to old plant kennel); Sharp v. Jenkins, 367 S.W.2d 464 (Tenn. 1963) (utility man at lumberyard ordered to cut grass at employer's home); *In re* Collin's Dependents' Case, 173 N.E.2d 641 (Mass.Sup.Jud.Ct. 1961) (employee of city water department ordered to haul 80 pound coal bags to supervisor's residence); Nichols v. Davidson Hotel Co., 333 S.W.2d 536 (Mo.Ct.App. 1960) (hotel bellhop told to chauffeur women guests to party); Brown v. Hartford Accident & Indemnity Co., 126 So.2d 768 (La. 1960) (porter and handyman at bookbindery asked to do carpentry work on boss' rental property); McAdams v. Canale, 294 S.W.2d 696 (Tenn. 1956) (general aide, clerk, secretary told to drive employer on personal trip); Dobson v. Standard Accident Insurance Co., 84 So. 2d 210 (La. 1955) (truck driver, handyman ordered to remove fence from employer's residence property); Wilson & Co., Inc. v. Curry, 68 So. 2d 548 (Ala. 1953) (plant mechanic told to construct barbeque pit for supervisor's personal use); National Surety Corp. v. Kemp, 65 So. 2d 840 (Miss. 1953) (gin operator was told to do some personal work at home of one of the company's partners); Pridgen v. Industrial Commission, 217 P. 2d 592 (Ariz. 1950) (glazier for glass and mirror business asked to go to his boss' private ranch and aid a veterinarian in caring for ailing calf); Moody v. Baxley, 28 So. 2d 325 (Fla. 1946) (restaurant cook told to install lock, after working hours, on employer's farm building); Arrington v. Murray, 28 S.E.2d 19 (Vir. 1943) (service station handyman told to clean cellar floor in home of co-owner of station); Wilkerson v. Steinberg & Spielfogel, 29 A. 2d 714 (N.J. 1943), *aff'g,* 27 A. 2d 206 (N.J.Ct.C.P. 1942) (grocery wholesaler's deliveryman told by foreman to move furniture for third party); Ferragino v. McCue's Dairy, 26 A. 2d 730 (N.J. 1942) (dairy employee ordered to move piano at church); Castagna's Case, 38 N.E.2d 63 (Mass.Sup.Jud.Ct. 1941) (highway laborer told to assist in extinguishing fire); Jackson's Case, 20 N.E.2d 401 (Mass.Sup.Jud.Ct. 1939) (house painter employed by a trust to attend to trust realty directed to paint trustee's personal property); Swartout v. Niagara Falls YMCA, 15 N.Y.S.2d 625 (N.Y.App.Div. 1939) (camp leader directed to participate in boxing match); Keasey v. Mitzel Bros., 5 A. 2d 631 (Pa.Super. 1939) (yardman for sand and cement company

are employed depending somewhat upon the wording of different state statutes.

Some courts have reasoned that the mere fact that the particular act which the claimant is requested to perform is unusual or not customarily required of an employee in that business does not result in terminating or suspending temporarily the existing status of the claimant as an employee of the employer in the usual course of his business. Whatever the normal course of employment may be, the employer and supervisory staff have it within their power to enlarge or extend the scope of employment to cover services and tasks outside the usual area.[4]

Other courts have held that a statute which defines an employee as one who performs services for remuneration in the course of the trade, business, profession or occupation of the employer at the time of the injury, omits from coverage only those as to whom there does not exist, at the time of the injury, employment in the usual course of business of the alleged employer. When such employment does exist, an employee is not excluded because the service which he is

---

asked to paint one partner's home); Liberty Mutual Ins. Co. v. Neal, 191 S. E. 393 (Ga.App. 1937) (mill employee injured while cutting wood as ordered on farm of mill overseer); Nugent Sand Co. v. Hargesheimer, 71 S.W.2d 647 (Ky.Ct.App. 1934) (company mechanic sent, after hours, to president's home to repair furnace); Petersen v. Corno Mills Co., 249 N. W. 408 (Iowa 1933) (company messenger boy sent to executive's house to clean up lawn); Kern v. Southport Mill, 141 So. 19 (La. 1932) (pipefitter at cotton oil mill directed to do work at one of executive's residences); Metzger v. Koefler, 235 N. W. 802 (Wis. 1931) (painter ordered to haul furniture to employer's summer cottage); MacDonald v. Grand Battery and Ignition Service, 173 N. E. 886 (N.Y. 1930) (electrician while at employer's house off hours asked to crank up boss' car); Nygaard v. Throndson Bros., 217 N. W. 370 (Minn. 1928) (employee who worked with threshing unit asked to drive employer on errand); O'Rourke v. Percy Vittum Co., 207 N. W. 636 (Minn. 1926) (stockyard employee regularly sent to president's personal farm to bring in livestock); City of Oakland v. Industrial Accident Commission, 170 P. 430 (Cal.Dt.Ct.App. 1917) (teamster at city woodyard directed to move household goods of indigent city resident). See also Schneider, supra, at § 1660 (b); Larson, supra; Annotation, Workmen's Compensation: coverage of industrial or business employee when performing, under orders, services for private benefit of employer or superior, or officer, representative, or stockholder of corporate employer, 172 A.L.R. 378 (1948).

4. Continental Casualty Co., supra; Nichols, supra; McAdams, supra; Wilson & Co., Inc., supra; National Surety Corp., supra; Pridgen, supra; Arrington, supra; Nugent Sand Co., supra; Petersen, supra; Nygaard, supra; O'Rourke, supra.

temporarily performing for his employer at his employer's direction is not customarily requested of employees in such employment. When such employment does exist it is sufficient that the service, which such an employee is performing when injured, grows out of and is incidental to his employment.[5]

Some of these cases are predicated on a theory that a statute, which defines compensable accidents as only those "arising out of and in the course of employment," does not exclude recovery by an injured employee because the service which he was temporarily performing for his employer was not one usually requested of employees in such type of employment since the compensation act "does not say 'when doing the work he was employed to perform.' " *Nugent Sand Co., supra,* at 648. These cases reason that the language and the intent of the act are of wider scope, so as to provide coverage of employees who are performing tasks directed by their employers.[6]

In addition some courts, relying on an estoppel theory, have found that an employer is precluded from arguing that an injury did not arise in the course of employment, if such injury was incurred while the employee was performing a job assigned by his employer. These courts rationalize that a service arises out of employment whenever the employer calls for such a service.[7]

Maryland Code (1957, 1964 Repl. Vol., 1974 Cum. Supp.), Art. 101, § 21 (a) defines an "employer" subject to the provisions of the Workmen's Compensation Act as:

> "(1) Every person that has in the State one or more employees subject to this Act."

---

**5.** Harry Fleming Washer Service, *supra;* Moody, *supra;* Metzger, *supra;* Nygaard, *supra;* O'Rourke, *supra.* In some states there exists a statutory presumption that if an employee is directed to do a task by his employer, it falls within the usual course of the employer's business. *See* Friend v. Industrial Commission, 237 N.E.2d 491, 492 (Ill. 1968); Harry Fleming Washer Service, *supra; In re* Collin's Dependents' Case, *supra;* Castagna's Case, *supra;* Jackson's Case, *supra.*

**6.** Department of Parks, *supra;* Continental Casualty Co., *supra;* McAdams, *supra;* Pridgen, *supra;* Ferragino, *supra;* Nugent, *supra;* Petersen, *supra.*

**7.** Brown, *supra;* McAdams, *supra;* Dobson, *supra;* Arrington, *supra;* Kern, *supra.*

Article 101, § 21 (b) defines an "employee" subject to the provisions of the Act as:

"(1) Every person, including a person under 18 years of age, whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, expressed or implied . . .

. . .

"(5) Every person performing services for remuneration in the course of the trade, business, profession or occupation of an employer at the time of the injury, provided such person in relation to this service does not maintain a separate business, does not hold himself out to and render service to the public and is not himself an employer subject to this Act."

Article 101, § 15 requires every employer subject to the provisions of the Act to:

". . . pay or provide as required herein compensation according to the schedules of this article for the disability or death of his employee *resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment* without regard to fault as a cause of such injury . . . ." (Emphasis added.)

The Workmen's Compensation Act should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. *State v. Richardson,* 233 Md. 534, 541, 197 A. 2d 428, 431 (1964); *Bethlehem-Sparrows Point Shipyard, Inc. v. Hempfield,* 206 Md. 589, 594, 112 A. 2d 488, 491 (1955); *Watson v. Grimm,* 200 Md. 461, 472, 90 A. 2d 180, 185 (1952); *Bethlehem-Fairfield Shipyard, Inc. v. Rosenthal,* 185 Md. 416, 424, 45 A. 2d 79, 83 (1945); Maryland Code (1957, 1964 Repl. Vol.), Art. 101, § 63. Any uncertainty in the law should

be resolved in favor of the claimant. *Rosenthal, supra;*
*Brocker Mfg. v. Mashburn,* 17 Md. App. 327, 336, 301 A. 2d
501, 506 (1973); *Uninsured Employment Fund v. Booker,* 13
Md. App. 591, 594, 284 A. 2d 454, 456 (1971); *Subsequent
Injury Fund v. Chapman,* 11 Md. App. 369, 376, 274 A. 2d
870, 874, *aff'd mem.,* 262 Md. 367, 277 A. 2d 444 (1971).

Following this rule of statutory construction and the
previous rationales, we now hold that whenever, by virtue of
a contract express or implied, an employer-employee
relationship exists between two parties, and the employer,
or his agent as the employee's superior, directs the employee
to perform services outside of or beyond his customary or
usual duties and/or of a nature not ordinarily required in
the employer's business for the private benefit of the
employer or his agent, rather than for the benefit of the
business, the order constitutes a permissible exercise of the
employer's authority to enlarge or extend the scope of
employment and expands the existing employment contract.
It does not create a new employment contract. Because the
existing employer-employee relationship is not terminated
but continues to exist while the employee is performing such
work, any injury resulting from the performance of such
work is compensable under the act. It would be inconsistent
with the purposes of the act to relieve an employer, who
directs an employee to perform an unusual task, from
liability for injuries incurred while the employee was
performing that task. Nor would it be consistent with the
policies of the act to compel an employee to ascertain
whether the task assigned lies within the scope of his
customary duties and, if not, to risk being fired if he refuses
to perform, or to lose the benefit of insurance coverage if he
does perform.[7a]

Applying these principles to the instant case produces a
clear result. Here the evidence establishes or supports a
rational inference that for several years before Saturday, 16
May 1970, by virtue of an implied contract of employment,

**7a.** As one court has said, "Had he not obeyed . . . [the] claim would have
been for unemployment rather than for workmen's compensation benefits."
San Antonio, *supra,* at 61.

the claimant performed various duties for the partnership required in the course of the partnership's pier and bulkheading business. During this period, the claimant had no other job, did not work alternately for any other employer, nor was he compensated in any way by anyone other than the partnership. Under this contract of employment both partners had the right to control and direct the claimant as to the type of work he was to perform, the time he was to perform it, and the place where it was to be performed. Because the availability of work depended upon the weather, the claimant was frequently unable to accrue 40 hours of work between Monday and Friday. When this occurred, and as a normal incident of claimant's job, he would be requested to work on Saturday. On some Saturdays the partners would ask appellant to work for the partnership. On other Saturdays he would be asked to cut the grass at Keene's garage. Whenever he performed this unusual incidental duty he was paid out of partnership funds.

On Saturday, 16 May 1970, after a week in which the claimant had not worked 40 hours, Keene directed the claimant to cut the grass at Pritchett's house, a function which the claimant had never before been required to perform. This order, made for the personal benefit of Keene, who wanted Pritchett released from the necessity of cutting his grass so that he could run an errand for Keene, was a permissible and legitimate exercise of Keene's authority to enlarge or extend the scope of the claimant's employment.[8]

---

8. The partnership and insurer strenuously assert that the partnership did not select and engage the claimant to cut Pritchett's grass and had not paid the claimant to cut Pritchett's grass in the past. They maintain that cutting Pritchett's grass was a function outside the scope of the partnership business and that, consequently, Keene as a partner had no authority to engage the claimant to cut Pritchett's grass. *Larson's, supra,* § 2740, at 5-265, 5-266 states:

"The question of the actual authority of the person issuing the order is sometimes adverted to in the cases but should not be decisive. In some instances ... there was evidence of actual authority, by custom, to use company employees for such private jobs .... But even where the order is a gross excess or even abuse of authority, surely the employee, who has no choice but to

The fact that the claimant undertook to cut Pritchett's grass, a service which was outside of and beyond his usual duties and not in the normal course of the partnership business, only because Keene was his employer and he reasonably anticipated, on the basis of past practice with respect to cutting grass at Keene's garage, that he would be paid by the partnership, and that the partnership was obliged to pay for such service,[9] establishes that the grass cutting project was undertaken in consequence of the existence of the relationship of employer and employee and as an unusual incident of the claimant's employment. The mere fact that cutting grass at Pritchett's house was not his usual duty, was not previously required of him and did not redound to the benefit of the partnership business did not

---

comply, should not be made to pay the price of his superior's wrong."

Here the facts that the partnership had previously provided Saturday work for the claimant when he failed to accrue 40 hours of work between Monday and Friday; that some of the Saturday work provided was to cut Keene's grass at Keene's garage; and that the partnership paid the claimant for the hours worked on Saturday, including the hours spent cutting Keene's grass, all support the conclusion that Keene had actual authority, by custom, to engage the claimant on behalf of the partnership to perform services for the benefit of Keene at sites other than the partnership premises. Moreover, the results in this case would not change even if Keene's direction to the claimant was a gross excess of authority. San Antonio, *supra*; Wilkerson, *supra*; Neal, *supra*.

9. The partnership and insurer vigorously assert that, because the claimant had never been paid previously to cut grass anywhere other than at Keene's property, that the partnership was not obligated, by custom or past practice, to pay the claimant for cutting grass at Pritchett's home and the claimant was not justified in assuming that the partnership would pay for such services. Moreover, the claimant was not paid by the partnership for cutting grass at Pritchett's and never demanded payment for the performance of such services. They maintain that these circumstances conclusively demonstrate that the claimant was not an employee of the partnership and that his injury did not arise out of and in the course of his employment. We do not agree.

The evidence that the partnership attempted to provide Saturday work for the claimant whenever he failed to accrue 40 hours of work between Monday and Friday, coupled with the evidence that Keene had directed the claimant to cut grass at his garage on Saturday and that the partnership had paid for such services, established that by custom Keene had authority to direct the claimant to cut grass on Saturday at sites other than property owned by the partnership and that when he so directed the claimant the partnership would pay the claimant for his services. Thus, the partnership was obligated, based upon custom and past practice, to pay for such work. Consequently, the partnership's failure to make the payment and the claimant's failure to make demands for the payment are immaterial with respect to the question here in issue.

terminate the claimant's status as an employee of the partnership. Rather the employer-employee relationship continued to exist during the period in which such services were being performed. Under such circumstances the partnership was liable for the injury sustained by the claimant while performing the task assigned to him by Keene even though it was not one ordinarily assigned to him, or required for the partnership's business and was not undertaken for the benefit of the partnership business.

The evidence was sufficient to sustain the jury's findings that the partnership was the employer of the claimant and that the claimant's injury arose out of and in the course of his employment. The judgment of the trial court will be affirmed.

*Judgment affirmed.*
*Costs to be paid by appellants.*