# Gerald M. Moore, et al.

## v.

# Charles A. Finney

Record No. 831562

November 26, 1986

Present: All the Justices

*Daniel Hartnett (Ayres, Hartnett & Custis*, on briefs), for appellants.

*Herman T. Benn (Susan T. Ferguson; Benn & Ferguson*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

Charles A. Finney sued Gerald M. Moore ("Moore") and Gerald M. Moore & Son, Incorporated (hereinafter referred to as "Moore & Son" or the "Corporation"), for injuries sustained when Moore backed a truck into Finney, crushing him against another vehicle. Moore was the president of Moore & Son. Finney was an employee of Moore & Son. Finney received workers' compensation benefits from Moore & Son for the injuries sustained in the accident. Yet Finney contends he had a right to sue Moore in tort. On the other hand, Gerald Moore and the Corporation filed a special plea of workers' compensation in which they contended that, at the time of the accident, Moore and Finney were both employed by the Corporation and, consequently, that Finney's exclusive remedy was under the Workers' Compensation Act.

The trial court ruled that Finney's suit was not barred by the Act. According to the trial court, at the time of his injury, Finney was not working for Moore & Son but instead was working for a separate company, Moore's Trucking, Incorporated ("Moore's Trucking"). Thus, the trial court concluded that at the time of his injury, Finney was not performing work that was part of Moore & Son's trade or business and could, therefore, maintain his suit.

▉ Upon familiar principles, the evidence, where in conflict, must be viewed in the light most favorable to Finney, the party who prevailed below. *See Stout* v. *Onorati*, 221 Va. 143, 267 S.E.2d 154 (1980).

The evidence established that in March 1982, William Moore, vice-president and chief operating officer of Moore & Son, hired Finney as a construction worker. However, Finney displayed mechanical ability and William Moore made him a mechanic. It was Finney's job as mechanic to maintain and repair any vehicle that came into the shop, regardless of ownership. More specifically, it was Finney's job to repair vehicles owned by either Moore & Son or Moore's Trucking.

On Friday, May 21, 1982, the day before the accident, Kenneth Northam, the dispatcher for Moore's Trucking, advised Finney

that a truck had to be repaired on Saturday so that it would be ready for use on Monday. Finney agreed to come to work on Saturday to make the repairs. Though it was normal for Finney to work on trucks owned by Moore's Trucking, the evidence established that employees of Moore & Son normally did not work on Saturdays. Further, Gerald Moore, the president of Moore & Son, said he had not told any of his employees to come to work on that day and was unaware of Finney's presence until the accident occurred.

Finney testified that when he arrived at work on Saturday, Northam told him to "drop the trailer" and proceed to work on the truck. Finney was unable to find a prop to hold up the trailer once it was detached from the truck and Northam advised him where to locate one. Finney then proceeded to make the repairs.

Though Finney admitted that it was not unusual for him, in his capacity as mechanic for Moore & Son, to work on a truck owned by Moore's Trucking, he maintained that because he was working on Saturday he thought he was working for Moore's Trucking. Finney admitted further, however, that the only time he had been paid separately for work on behalf of Moore's Trucking was when, on three occasions, he drove for Moore's Trucking. Otherwise, Moore & Son paid him his regular salary with no additional money for working on trucks from Moore's Trucking.

According to the trial court, in determining whether Finney was an employee of Moore & Son at the time of his injury, the question was who controlled Finney on that day. The trial court said that, in fact, no one actually controlled Finney but that since Northam had asked Finney to work on Saturday, then Northam could have exercised such control. In our opinion, the trial court erred. Therefore, we will reverse its judgment.

Finney contends that he was a loaned employee under the control of Moore's Trucking at the time he was injured. Moore contends that Finney was neither on loan to Moore's Trucking nor under the control of Moore's Trucking. In our view, Moore is correct on both points.

There is ample evidence that Finney was a mechanic for Moore & Son. However, there is no evidence that Finney was on loan to Moore's Trucking. If Finney were on loan to Moore's Trucking, Moore & Son would have had to make the loan. Gerald Moore testified that no one at Moore & Son directed Finney to work for Moore's Trucking on Saturday. No other official of Moore & Son

testified that Finney had been turned over to Moore's Trucking for work on Saturday.

Finney came to work on Saturday because repairing trucks owned by Moore's Trucking was part of his job and because Northam had asked him to do the work on Saturday. When Finney came to work, he used the same facilities that he used every day in his work for Moore & Son. Indeed, he did the same work that he did each day for Moore & Son. Yet, by Finney's view of the case, simply because he worked on Saturday, he lost his status as an employee of Moore & Son and became an employee of Moore's Trucking with the result that he could sue Moore & Son for injuries received while doing work that he normally did for Moore & Son.

■ Finney's position in this appeal overlooks an important distinction drawn by this Court in the case of *Arrington* v. *Murray*, 182 Va. 1, 28 S.E.2d 19 (1943), which also involved the contention that an employee was on loan. In *Arrington*, we rejected the loaned-employee argument and noted that "there is an important distinction between lending an employee to another and giving orders to the employee to do some work for a third party." 182 Va. at 5, 28 S.E.2d at 20 (quoting *Keasey* v. *Mitzel Bros.*, 135 Pa. Super. 460, 461, 5 A.2d 631, 631(1939)). Finney was a person in the latter category; he was under orders to fix every vehicle that came into the shop at Moore & Son. The fact that he was directed by Moore & Son to fix vehicles for Moore's Trucking does not, in our view, turn him into a temporary employee of Moore's Trucking simply because the work was done on Saturday instead of a normal workday. In our view, the direction to Finney to fix any vehicle that came into the shop carried the implicit additional direction to perform this repair work when and where necessary.

■ Moreover, even if Finney were on loan, he was not under the control of Moore's Trucking and, thus, did not become its special employee. Finney contends that Moore's Trucking's control over him on the day of the accident met the test for control discussed in *Coker* v. *Gunter*, 191 Va. 747, 63 S.E.2d 15 (1951). There we wrote as follows:

the rule of *respondeat superior* rests on the power of control and direction, which must be as proprietor, in the sense of stopping the work or of continuing it, and determining the

way it shall be done, with reference to the method of reaching the result, and not merely the result to be reached. . . .

*Id.* at 752, 63 S.E.2d at 17 (citing Annot., 42 A.L.R. 1416 (1926)). *See also Kay Management* v. *Creason,* 220 Va. 820, 263 S.E.2d 394 (1980).

We disagree with Finney. There was, in our opinion, no evidence that Moore's Trucking controlled the method Finney used to repair the truck. Moore's Trucking, through Northam, simply asked Finney to repair a universal joint on a truck. That was all. Though Moore's Trucking may have been able to cause Finney to stop working on the truck, it could not do more than that. The evidence was that, as a mechanic, Finney fixed the vehicles in the manner he thought appropriate. Moore's Trucking did not determine the way in which Finney was to make the repairs. All Moore's Trucking sought was a repaired truck. But a repaired truck was merely the result to be reached. The fact that a Moore's Trucking representative told Finney to drop the trailer from the truck and start work falls far short of controlling the method by which the repairs were to be achieved.

Finney places a great deal of reliance upon *Ideal Laundry* v. *Williams,* 153 Va. 176, 149 S.E. 479 (1929). According to him, *Ideal Laundry* is on all fours with the present problem and requires a finding that he was an employee of Moore's Trucking at the time of the accident. We disagree.

In *Ideal Laundry,* the injured employee was required to work four days per week at the laundry as a janitor. On the remaining two days he was to work at the homes of two separate supervisors. He was injured while working at the home of one of the supervisors. He was engaged in building a grape arbor when a nail struck him in the eye, blinding him in that eye. He sought workers' compensation benefits from Ideal Laundry. He was denied compensation, and we affirmed that decision. We concluded that, at the time of his injury, he was under the control of the supervisor and his wife "both as to the work performed and the method of doing it." *Id.* at 178, 149 S.E. at 480. Here, by contrast, the trial court concluded that no one "exercised any control over Finney during" the period of work on Saturday. Further, upon our review of the record, we reach a similar conclusion, stated above, that all Moore's Trucking did was to advise Finney of the desired result. The level of control in evidence in this case

was insufficient under *Ideal Laundry* to justify the conclusion that Finney was the special employee of Moore's Trucking.

We hold, in light of the foregoing, that the trial court erred in denying the special plea of workers' compensation. Therefore, we will reverse the judgment of the trial court and enter final judgment here sustaining defendants' special plea.

*Reversed and final judgment.*